**Bonnie HARGIS, Appellant,**

v.

**JLB CORPORATION d/b/a Golden Oak Lending, Respondent.**

**No. SC 91639.**

Supreme Court of Missouri, En Banc, En Banc.

Dec. 20, 2011.

Christian G. Montroy, Montroy Law Offices LLC, Ronnie L. White, James P. Holloran, Holloran, White Schwartz & Gaertner LLP, St. Louis, for Hargis.

E. Robert Schulz, Ronald J. Eisenberg, Schultz & Associates LLP, Chesterfield, for JLB.

LAURA DENVIR STITH, Judge.

Bonnie Hargis appeals the circuit court's grant of summary judgment to JLB Corporation on her claims that (1) JLB engaged in the unauthorized practice of law by procuring, preparing and assisting in the drawing of legal documents as it negotiated with lenders to obtain mortgages for its clients and that (2) JLB was unjustly enriched by charging her for document preparation services it did not provide. So far as the record shows, JLB assisted Ms. Hargis only in preparing financial documents, which does not constitute the practice of law. The record does not show that

JLB procured or assisted in the drawing of Ms. Hargis' note, deed of trust or other legal documents. Rather, these documents were drawn and filled in by third parties that are not shown to have been controlled by or acting as an agent of JLB. These third parties are not parties to this suit, and whether their conduct constitutes the unauthorized practice of law is not before the Court. Accordingly, this Court affirms the grant of summary judgment to JLB as to Counts I and II relating to the unauthorized practice of law.

The trial court erred in granting JLB summary judgment on Count III, which alleges unjust enrichment (money had and received). The viability of that count does not depend on a finding that JLB engaged in the unauthorized practice of law, and JLB's summary judgment motion failed to negate any element of Ms. Hargis' unjust enrichment claim. The judgment is affirmed in part and reversed in part, and the case is remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

JLB is a Missouri corporation that provides mortgage brokering services. Its main business is matching borrowers who need a mortgage with lenders willing to finance them. To successfully match a borrower with a lender, JLB first must provide the potential lender with financial information about the borrower, including information about credit history, prior mortgages, and current and past employment. JLB then assists the borrower in preparing a loan application and other financial disclosure forms.

Once a lender approves a loan, a note and a mortgage or deed of trust must be prepared. The summary judgment record does not show that JLB plays a role in drawing, filling out or procuring these documents. Rather, so far as the summary judgment record shows, JLB gathers information necessary to prepare these documents and provides that information to title companies, investors and/or a California company called Document Systems Inc. According to the record adduced below, these third parties then prepare the note and a mortgage or deed of trust and send them to JLB, which then completes its "middleman" role in the refinancing process by transferring these documents to the borrower.[1]

In January 2009, Ms. Hargis entered into an agreement with JLB to refinance her home in Barnhart, Missouri. JLB's vice president, Mr. John Paci, testified at his deposition that JLB provided a number of services to obtain refinancing for Ms. Hargis, including matching her with a sponsoring lender, U.S. Bank N.A.; preparing her loan application and other financial disclosure documents; gathering information necessary for title companies, investors and/or Document Systems to prepare her note and deed of trust;[2] and

---

1. Document Systems claims to be the largest loan document production services company in the United States. Its hallmark product is the DocMagic computer program, which it uses to create notes, mortgages, deeds of trust and other documents related to real estate transactions. Document Systems is not a party to this case, and the record is silent as to whether the forms it provides to Missouri customers were drawn, procured or filled out by lawyers licensed in Missouri or how it charges for its services. This Court expresses no opinion as to whether Document Systems' conduct constitutes the unauthorized practice of law.

2. The parties refer to the specific documents prepared for Ms. Hargis by third parties in various ways, including "mortgage documents," "closing documents," "the promissory note, deeds, mortgages (deeds of trust)" and "the note and deed of trust," but include only the note in the record on appeal. In Missouri, mortgage documents generally con-

transferring those documents to Ms. Hargis after their completion. JLB charged Ms. Hargis the following fees: (1) a $1,890.50 loan origination fee; (2) a $1,923.58 loan discount; (3) a $900 broker fee; (4) a $550 underwriting fee; (5) a $208 administrative fee; and (6) an $899 processing fee.

JLB says it charged the processing and administrative fees for helping Ms. Hargis prepare her loan application and disclosure documents, gathering information needed to complete the note and deed of trust, and transferring these documents to Ms. Hargis. JLB says it played no role in drawing the note or deed of trust, which were prepared by title companies, investors and/or Document Systems, and did not charge for their preparation.

Ms. Hargis disagrees. In February 2009, she filed a three-count petition against JLB in St. Louis County circuit court. Count I alleges that JLB engaged in the unauthorized practice of law in violation of section 484.010 [3] in charging her a fee for preparing, procuring and assisting in the drawing of legal documents and in preparing her loan application and other financial disclosures as it negotiated with a lender to obtain refinancing for her. In Count II, Ms. Hargis asserts that engaging in the unauthorized practice of law in this manner was a deceptive and unfair practice that violated the Missouri Merchandising Practices Act. § 407.010 et. seq. In Count III, Ms. Hargis alleges that JLB was unjustly enriched because it charged her various fees for services it did not provide.

In August 2009, JLB filed a motion for summary judgment in which it asserted that: (1) it did not procure or assist in the drawing of legal documents, that it simply

engaged in negotiations with a lender and acted as a middleman in connecting Ms. Hargis to the lender; (2) that acting as a middleman between a borrower and a lender is not the unauthorized practice of law; and (3) that it did not charge Ms. Hargis for the provision of legal services. After an opportunity for discovery by Ms. Hargis and following briefing by both parties, on March 8, 2010, the trial court granted JLB summary judgment on all three counts. Ms. Hargis appealed to the Missouri court of appeals. After opinion by that court, this Court granted transfer. Mo. Const. art. V, § 10.

## II. STANDARD OF REVIEW

"The standard of review of appeals from summary judgment is essentially de novo." *State ex rel. Koster v. Olive,* 282 S.W.3d 842, 846 (Mo. banc 2009). This Court "will review the record in the light most favorable to the party against whom judgment was entered." *Id.* "Summary judgment shall be entered if 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'" *Id., quoting Rule* 74.04(c)(6). "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *ITT Commercial Fin. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 382 (Mo. banc 1993).

## III. JLB DID NOT ENGAGE IN THE UNAUTHORIZED PRACTICE OF LAW

### A. Law Governing the Unauthorized Practice of Law

The practice of law in Missouri, as in other states, long has been restricted solely to licensed attorneys so as to "pro-

---

sist of a note and deed of trust, and that is the terminology that will be utilized here.

**3.** All statutory references are to RSMo 2000 unless otherwise noted.

tect the public from being advised or represented in legal matters by incompetent or unreliable persons." *Hulse v. Criger*, 363 Mo. 26, 247 S.W.2d 855, 857–58 (1952). Since 1915,[4] the Missouri legislature has had statutes defining the "practice of law" and providing penalties for its unauthorized practice. *See In re Mid–America Living Trust Associates, Inc.*, 927 S.W.2d 855, 859 (Mo. banc 1996).

■ Because the judiciary is the "sole arbiter of what constitutes the practice of law," *Hulse*, 247 S.W.2d at 857–58, such statutes merely act in aid of this Court's regulation of the practice of law and cannot "supersede or detract from, the power of the judiciary to define and control the practice of law." *Id.* Nonetheless, this Court has used these statutory definitions of the "practice of law" as a reference point for determining the scope of the practice of law. *See, e.g., id.; Eisel v. Midwest BankCentre*, 230 S.W.3d 335, 338 (Mo. banc 2007).

Section 484.010.1 defines the "practice of law" as:

the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies.

*Id.* Section 484.010.2 defines the "law business" as:

the advising or counseling for a valuable consideration of any person, firm, association, or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to obtain or securing or tending to secure for any person, firm, association or corporation any property or property rights whatsoever.

*Id.* Beginning with its decision in *Hulse* in 1952, this Court repeatedly has utilized these statutory definitions to assist it in determining what constitutes the unauthorized practice of law in regard to real estate transactions. 247 S.W.2d at 856–57.

In *Hulse*, real estate brokers obtained standardized form documents, including notes and deeds of trust, and then filled in blanks on these documents based on the specific information provided by their clients. *Id. Hulse* held that although notes and deeds of trust are legal documents, mortgage brokers are not engaging in the unauthorized practice of law if they merely fill in blanks in standardized Missouri document forms so long as a Missouri attorney created the legal documents and filling in the blanks on the documents was ancillary to the broker's main business. *Id.* at 862.

By contrast, the broker would be engaging in the unauthorized practice of law if it charged a separate fee or increased its customary charges for helping fill in the blanks, if it gave advice as to the legal effect of the documents or if the documents were not drawn by a Missouri attorney. *Id.*

This Court addressed the unauthorized practice of law again in *In re First Escrow*, 840 S.W.2d at 841. There, non-

---

**4.** *See, e.g., S.B. 378, Forty–Eighth Gen. Assemb., Reg. Sess.* (Mo.1915); § 666 RSMo 1919; § 11692 RSMo 1929; § 13313 RSMo 1939. The definitions of the "practice of law" and of the "law business" have remained the same since 1915. § 484.010.

lawyer employees of two escrow companies had gathered information from the borrower, lender, and any lawyers or title companies involved in certain real estate transactions and used this information to prepare documents necessary to close the transactions.

*In re First Escrow* held that non-lawyer employees of escrow companies could "fill in the blanks of certain standardized form documents required to close real estate transactions only if they do so under the supervision of, and as agents for ... [a party] who has a direct financial interest in the transaction." *Id.* at 846–47. Further, these companies "may not prepare or complete nonstandard or specialized documents" and "may not charge a separate fee for document preparation, or vary their customary charges ... based upon whether documents are to be prepared in the transaction." *Id.* at 848–49.

Similarly, addressing the unauthorized practice of law by trust companies, this Court held in *In re Mid–America*, 927 S.W.2d at 856–58, that although "merely gathering information for use in a legal document does not necessarily constitute the unauthorized practice of law," the trust companies' actions there did because the non-lawyer trust officers "were not merely collecting information to fill in standardized forms as otherwise might have been approved by *Hulse* and *In re First Escrow*. Instead, they also were giving legal advice to their clients about choices to be made and the legal effects of those choices." *Id.* at 865 (citations omitted). This Court further distinguished the facts of *In re Mid–America* from *Hulse* and *In re First Escrow* by stating:

In *Hulse* and *In re First Escrow*, we held that non-attorneys could properly fill in blanks in standard real estate forms when they performed such a service *without compensation* and ancillary to other valid duties. Mid–America does not fall within this exception. The documents sold are not standardized forms accepted generally within a particular business or industry, but proprietary documents unique to Mid–America. Mid–America markets, drafts, and executes customized legal documents *for compensation*. This service is not ancillary to any other valid business, but is the end business itself.

*Id.* at 864–65 (emphasis in original) (citations omitted). Mid–America's employees could not charge for counseling or recommending trusts or for drawing, procuring or assisting in drawing trust documents. *Id.* at 871.

In 2007, this Court handed down *Eisel*, its most recent case addressing the unauthorized practice of law in the real estate context and explaining the importance of not charging or varying fees for filling in blanks on legal forms. In *Eisel*, Midwest Bankcentre charged its clients a fee for having its non-attorney employees fill out pre-printed forms related to processing mortgage loans including promissory notes and deeds of trust. 230 S.W.3d at 337. This Court found that promissory notes and deeds of trust were legal documents and that Midwest engaged in the unauthorized practice of law by having non-attorneys prepare such documents for a fee. *Id.* at 339 (finding charging a separate fee puts the emphasis on "legal drafting as a business rather than on the business of being a real estate broker.").[5]

<hr>

5. JLB incorrectly cites *Carpenter v. Countrywide Home Loans, Inc.*, 250 S.W.3d 697, 702 n. 4 (Mo. banc 2008), for the proposition that "[t]his Court has recently moved away from the language in *In re First Escrow, Inc.*, 840 S.W.2d 839, 849 (Mo. banc 1992), concerning the varying of charges." *Carpenter* concerned the charge of a separate fee for the prepara-

## B. What Constitutes Procuring Legal Documents

The principles set out in these cases guide this Court in deciding whether JLB engaged in the unauthorized practice of law by: (1) gathering copies of pre-existing legal documents; (2) assisting Ms. Hargis in filling out her loan application and other financial disclosures; or (3) helping her obtain her note and deed of trust by providing financial information to third parties who then prepared these documents.

In relevant part, section 484.010.2 defines the "law business" as "the drawing or the *procuring* of or assisting in the drawing *for a valuable consideration* of any paper, document or instrument affecting or relating to secular rights." § 484.010.2 (emphasis added). This definition is consistent with this Court's recognition in *In re First Escrow* that the practice of law involves not only "the preparation of closing documents" but "also encompasses 'the procuring of or assisting in the drawing' of [legal] documents." 840 S.W.2d at 843, *quoting* § 484.010.2.

Ms. Hargis does not claim that JLB drew legal documents but does claim that JLB procured or assisted in drawing legal documents for valuable consideration. To determine whether the record supports this claim, the Court first must determine what constitutes "procuring" a legal document. Section 484.010.2 does not define it. Ms. Hargis says it means the same thing as gathered or obtained, while JLB says that it means taking part in the drafting of legal documents.

In *Giles v. California*, 554 U.S. 353, 360, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), the United States Supreme Court addressed the meaning of "procure" in the context of a rule that required a witness to have been "kept back" or "detained" by "means or procurement" of the defendant. The Supreme Court said in relevant part:

> [a]lthough there are definitions of "procure" and "procurement" that would merely require that a defendant have caused the witness's absence, other definitions would limit the causality to one that was *designed* to bring about the result "procured." See 2 N. Webster, An American Dictionary of the English Language (1828) (defining "procure" as "to *contrive* and effect" (emphasis added). . . . Cases and treatises of the time indicate that a purpose-based definition of these terms governed.

*Id.* (emphasis in original).

Missouri courts utilized a similar definition in *Tabb v. Burt*, 296 S.W. 820 (Mo. App.1927), stating that the word "'procure' means "[t]o bring about by care and pains; effect; contrive and effect; induce; cause; as, he procured a law to be passed." *Id.* at 821. These definitions are consistent with more recent dictionary definitions of "procure." *The American Heritage Dictionary of the English Language* 1399 (4th ed.2009) defines "procure" as "(1) to get by special effort; obtain or acquire; . . . (2) To bring about, effect. . . ." *Black's Law Dictionary* 1327 (9th ed.2009) says "procurement of breach of contract" is a form of tortious interference with contractual relations, which *Black's* defines as "[a] third party's intentional inducement of a contracting party to break a contract." *Id.* at 1627.

What these definitions have in common is that procurement requires active involvement in the obtaining of some object,

---

tion of legal documents and noted that the charge of such a fee is a *sufficient* basis on which to hold a party liable for the unauthorized practice of law. *Id.* at 702. Neither

*Carpenter* nor *In re First Escrow* changed the settled rule that the varying of customary charges also can constitute the unauthorized practice of law.

person or purpose; it involves acting to bring about or contriving to cause an effect. While the outer parameters of what constitutes "procurement" may be somewhat indefinite under these definitions, it is clear that it involves more than merely passively gathering or obtaining information, data or documents from third parties or other sources. This is consistent with *In re Mid–America*'s holding that "merely gathering information for use in a legal document does not necessarily constitute the unauthorized practice of law." 927 S.W.2d at 865.

### C. JLB is not Shown to Have Procured Legal Documents

Here, there are three types of documents that JLB acquired for Ms. Hargis. If any of these are legal documents, and if the record shows that JLB procured or assisted in drawing them, then it was error to grant summary judgment to JLB on Ms. Hargis' claims of the unauthorized practice of law.

In considering this issue, this Court is limited to the record presented on summary judgment. Here, JLB moved for summary judgment under Rule 74.04. It was required to set out a statement of uncontroverted facts that entitled it to summary judgment. *Rule* 74.04(c)(1). Ms. Hargis then had the opportunity to respond by admitting or denying each of these statements. *Rule* 74.04(c)(2). In denying any statements, she could not rest on the allegations of her pleadings but was required to "support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." *Rule* 74.04(c)(2); *Renaissance*

*Leasing, LLC v. Vermeer Mfg. Co.,* 322 S.W.3d 112, 120 (Mo. banc 2010). Summary judgment will be granted only if the summary judgment motion and responses "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Rule* 74.04(c)(6); *Olive,* 282 S.W.3d at 846.

Initially, after JLB filed its motion for summary judgment, the trial court granted Ms. Hargis time to conduct discovery before responding. Her response noted that JLB had failed to include a statement of uncontroverted facts, as required by Rule 74.04(c)(1). The trial court granted JLB leave to amend its motion to include this statement of uncontroverted facts.[6] These allegedly uncontroverted facts were based largely on the affidavit and deposition testimony of Mr. John Paci, JLB's vice president. Ms. Hargis then filed a further response, alleging, principally based on Mr. Paci's deposition testimony, that the facts surrounding JLB's assistance to Ms. Hargis in gathering preexisting legal and financial documents, in filling out her loan application and financial disclosures, and in obtaining the note and deed of trust from title companies, investors and/or Document Systems showed that JLB had procured or assisted in drawing these documents and in so doing had engaged in the unauthorized practice of law. This Court, therefore, turns to the record on which both parties rely to determine whether JLB's conduct is shown to have constituted the unauthorized practice of law.

### 1. Obtaining Pre-existing Legal and Financial Documents

---

**6.** Ms. Hargis asserts that the trial court abused its discretion in allowing JLB to amend its motion to include the required statement of uncontroverted facts. But no authority is cited that this was not within the court's discretion, where, as here, the court then gave Ms. Hargis further time to respond. Moreover, had permission been denied, JLB simply could have filed a new motion with the required statement of uncontroverted facts.

582

The first type of document that the record shows JLB helped Ms. Hargis obtain was copies of previously prepared financial documents relating to Ms. Hargis' prior loans, mortgages, employment and credit history. JLB obtained some of these documents from Ms. Hargis and others from her prior lenders, creditors and employers. Ms. Hargis does not offer any basis as to why gathering these pre-existing financial and legal documents would constitute the practice of law. As stated above, procuring documents requires more than the mere gathering of documents. Because JLB simply gathered these pre-existing documents, Ms. Hargis' allegations do not provide a basis for finding that JLB engaged in the unauthorized practice of law. *In re Mid–America*, 927 S.W.2d at 856–58 (holding that "merely gathering information for use in a legal document does not necessarily constitute the unauthorized practice of law.").

*2. JLB Gathers Information Used by Others to Prepare Legal Documents*

■ According to the record, JLB sent the information it gathered about Ms. Hargis' financial situation to investors, title companies and/or Document Systems that prepared [7] Ms. Hargis' note and deed of trust. As discussed above, notes, mortgages and deeds of trust are legal documents and must be drawn by a lawyer licensed to practice law in Missouri if they are to be utilized in the financing of a Missouri property. *In re First Escrow*, 840 S.W.2d at 848–49; *Eisel*, 230 S.W.3d at 337. Similarly, if a non-attorney procured or assisted in the drawing of a note, mortgage or deed of trust without the review or supervision of an attorney licensed to prac-

tice in Missouri, it would constitute the unauthorized practice of law. *In re First Escrow*, 840 S.W.2d at 848–49; *Eisel*, 230 S.W.3d at 337. By contrast, filling in standardized forms is not the unauthorized practice of law so long as no fee is charged and legal judgment or discretion is not involved. *In re First Escrow*, 840 S.W.2d at 848–49.

■ Here, JLB is the only defendant. The record shows that it did not draw the note or deed of trust itself. Whether its conduct is the unauthorized practice of law depends on whether it procured or assisted in the drawing of these documents. While Ms. Hargis says that the record shows that this occurred, her argument is based principally on her contention that gathering documents is legally equivalent to procuring them. As set out above, however, procuring documents requires proof of more than merely obtaining or passively gathering documents. It requires active involvement in obtaining some object, person or purpose, acting to bring about or contriving to cause an effect.

This the record does not show. As noted, the record consists principally of the deposition and affidavit of Mr. Paci. Mr. Paci explained that JLB acted as a conduit in transmitting necessary factual information between Ms. Hargis and title companies, investors and/or Document Systems, who then prepared the note and deed of trust and sent them back to JLB. For example, in response to a question about who prepares "all the documents related to a mortgage that you guys process," Mr. Paci testified:

Well, we would prepare the loan application, [and] the disclosures. We would

7. The record is limited and does not show whether Document Systems or any of the other third parties drew the note and deed of trust or merely prepared them by filling in blanks in standardized forms of the docu-

ments. For ease of understanding this Court, therefore, will use the more generic term "prepare" when describing the document services provided by these third parties.

get the appraisal from the appraiser. We would get the title report from the title company. But we don't prepare those. Those get sent to us. As far as the closing documents, they either get prepared by either the title company or the investor we sell the loan to, or there's another document company called Document Systems or DocMagic.

Mr. Paci's affidavit stated that "the 'processing fee' and 'administrative fee' were charged for tasks associated with processing the loan, which include gathering forms and documents, communication with the underwriter, and obtaining additional information when required by the underwriter." When asked in his deposition whether JLB charges for the preparation of legal documents, Mr. Paci again stated, "I can tell you none of [our charges have] to do with preparing legal documents." He explained JLB's role as that of a middleman or clearinghouse, taking various financial documents from Ms. Hargis, her prior lenders and employers, and others and giving them to title companies, investors or Document Systems, which then prepared Ms. Hargis' note and deed of trust.

These statements show only that JLB gathered documents about Ms. Hargis' finances and transferred them to title companies, investors or Document Systems, which used the documents to prepare her note and deed of trust. The statements provided no basis for the trial court to find that JLB was involved in procuring or assisting in drawing the documents or that title companies, investors and/or Document Systems acted as its agent in so doing. So far as the record shows, JLB neither charged a separate document preparation fee[8] for preparing the note and deed of trust nor disguised such a fee as part of an administrative or processing charge. In sum, the record simply does not permit a finding of any conduct by JLB that could be found to constitute procuring or assisting in drawing the note or deed of trust or playing an active role in determining the content of these documents. Neither is there evidence JLB charged a fee or varied its charges for their drawing by others at its behest or that it did more than transmit information provided by others to third parties, who then prepared these documents.

Ms. Hargis raises the specter that a finding by this Court that JLB did not procure these documents on these facts will encourage banks, lenders, brokers and others to "outsource" the drawing of legal documents to third parties who will act as

8. Ms. Hargis suggests that she should be permitted to conduct additional discovery as to whether JLB charged a separate fee because it raised the issue that it has to be found to have charged a separate fee for its conduct to constitute the unauthorized practice of law only in its reply in support of its motion for summary judgment. As this Court has rejected JLB's argument that a document preparation fee may constitute the unauthorized practice of law only if it is stated separately rather than incorporated into other fees, this concern is moot. In any event, JLB has asserted in all of its filings that it neither separately charged a document preparation fee (however titled) nor incorporated such a fee into its administrative or processing fees, as asserted by Ms. Hargis in her petition, and Ms. Hargis explored both issues in her deposition of Mr. Paci. This issue was not new, even if the now-rejected claim that a separate fee must be charged was not developed until the reply brief. Moreover, Ms. Hargis had an opportunity to undertake additional discovery prior to the trial court's ruling but did not do so, nor did she request an opportunity to do so prior to the trial court taking up the summary judgment motion, as she both was permitted and required to do under Rule 74.04(f) if she believed additional discovery was needed, and she has not identified specific additional discovery that she previously was unable to undertake.

their agents in having non-lawyers draw legal documents for consideration and send them back without review by Missouri lawyers.

The problem with Ms. Hargis' argument is that this is not what the record shows happened here. She is correct that, under the facts she hypothesizes, a mortgage broker such as JLB would fall within the definition of "procuring" or "assisting" in drawing legal documents, for it would be undertaking an active role or contrivance in the drawing of the documents and, further, because it would be doing so for consideration. So far as this record shows, however, the third parties did not act as agents of JLB and JLB received no consideration for the drawing of the note and deed of trust. Instead, JLB simply obtained the documents from title companies, investors and/or Document Systems and transferred them to Ms. Hargis. This Court can review only the grant of summary judgment on the record before it, and that record does not show that JLB engaged in the unauthorized practice of law in gathering information and documents and acting as a middleman in the use of such information and documents by unrelated third parties to prepare Ms. Hargis' note and deed of trust.[9]

*D. Loan Applications and Other Financial Disclosure Forms are not Legal Documents*

■ Finally, Ms. Hargis argues that JLB engaged in the practice of law by charging to assist her in preparing a loan application and other financial disclosure documents required to obtain a loan. In support, she notes that *Hulse* stated:

> A real estate broker in conferring with parties to obtain facts and information about their personal and property status, other than is necessary to fill in the blank spaces in standardized forms necessary to complete and close transactions in which he is acting as a broker, for the purpose advising them of their rights and the actions to be taken concerning them, is engaging in the practice of law.

*Id.* at 863. She further notes that bankruptcy laws require the bankrupt party to file a list of assets and liabilities with the court and that only an attorney can make such a filing. Therefore, Ms. Hargis argues, helping her prepare a financial document that requires consideration of what to include as assets, what to include as liabilities, how to list them and so forth is the practice of law.

■ This argument goes too far. Determining whether a document is legal in nature requires this Court to "balance the protection of the public against a desire to avoid unnecessary inconvenience and expense." *See In re First Escrow,* 840 S.W.2d at 843. As *Hulse* noted, the key factor in making this determination is whether preparing the document requires legal judgment or discretion. 247 S.W.2d at 861. Legal and financial knowledge often overlap, and documents regarding finances often have legal effect, such as the filing of a tax return or the filling out of a retail credit card application.

---

**9.** Similarly, this Court agrees with the dissent that one can be found to have procured a document even if one did not draft or assist in drafting the document and that, if JLB paid a third party to draft or assist in drafting documents, then that party would be acting as JLB's agent and JLB would be responsible either for directly assisting in drafting or for procuring the documents. Both these points are made above. But, as also just discussed, summary judgment must be granted or denied based on the record before the Court, not based on speculation that evidence not in the record must exist. Here, the evidence in the record just does not support the dissent's factual inferences.

JLB acknowledges that it did work with Ms. Hargis to prepare her loan application and other financial disclosures. But this Court agrees with JLB that, unlike a note, deed of trust or mortgage, these applications and disclosure forms are primarily financial—not legal—documents, the preparation of which by members of the finance industry does not constitute the unauthorized practice of law. Ms. Hargis cites no authority for the proposition that preparing a loan application or a financial disclosure document inherently constitutes the practice of law rather than the practice of acting as a mortgage services provider, and this Court declines to so hold here.[10]

Although legal knowledge certainly would be helpful in determining how to fill out these and other financial documents, every financial document cannot for that reason alone be considered a legal document that must be prepared by an attorney. Were it otherwise, every accountant, banker, car dealer or retail clerk who helps someone pay taxes or fill out a credit application would have to be a lawyer or fill out the document under the supervision of a lawyer. This outcome would be patently unreasonable.

This does not mean that financial documents related to the mortgage process never can be legal documents, the preparation of which will constitute the unauthorized practice of law. As noted in *In re First Escrow*, if preparation of a particular document requires the exercise of legal judgment or discretion, then a lawyer must prepare it or supervise its preparation to avoid the unauthorized practice of law. 840 S.W.2d at 848–49 (escrow companies may not prepare or complete "nonstandard or specialized document ... or any other document that requires the exercise of judgment or discretion.").

But, so far as this record shows, that was not the case here. Although the documents in question—loan applications and other disclosure documents—require extensive disclosure of financial information, including employment history, monthly income and expenses, and a comprehensive list of assets and liabilities, they are standardized forms. The forms state what information is required to be filled in or provided; accuracy, rather than discretion—legal or otherwise—is what is required. JLB did not engage in the unauthorized practice of law in assisting Ms. Hargis in filling out these financial forms.

## IV. UNJUST ENRICHMENT CLAIM

 In addition to granting summary judgment against Ms. Hargis on her claims in Counts I and II that JLB engaged in the unauthorized practice of law, the trial court granted summary judgment against her on her claims of unjust enrichment (money had and received) in Count III.

 Rule 74.04(c)(1) states in part that "[a] motion for summary judgment shall summarily state the legal basis for the

---

10. Ms. Hargis is correct that a number of bankruptcy cases have held that forms requiring the listing of assets and liabilities for bankruptcy filings are legal documents that must be prepared by attorneys. *See, e.g., In re Ellingson*, 230 B.R. 426 (Bkrtcy.D.Mont. 1999); *In re Guttierez*, 248 B.R. 287 (Bkrtcy. W.D.Tex.2000). Those cases are distinguishable, however, because in bankruptcy cases, the documents are created specifically for filing in court, and legal discretion may be needed to ensure assets and liabilities are characterized in the correct manner and put in the proper categories so that the bankrupt party can maintain the greatest possible amounts of her or her assets.

By contrast, in this case the documents are created to apply for a loan, and the type of legal discretion needed to list assets and liabilities properly for a bankruptcy proceeding is not required.

motion. A statement of uncontroverted material facts shall be attached to the motion." "Generally, failure to comply with Rule 74.04(c)(1) warrants a trial court's denial of a summary judgment motion and warrants an appellate court's reversal of the grant of summary judgment." *Gillespie v. Estate of McPherson,* 159 S.W.3d 466, 470 (Mo.App.2005).

In the present case, JLB's motion for summary judgment did not contain a legal basis explaining why JLB was entitled to summary judgment on Ms. Hargis' third count, alleging unjust enrichment, nor did it set out uncontroverted facts that negated this claim. Instead, JLB merely set out facts supporting its argument that it did not engage in the unauthorized practice of law. Nevertheless, JLB asked generally for summary judgment in its favor, and the judgment granted JLB summary judgment on all three counts. Although the trial court did not explain why it granted summary judgment on Count III, JLB suggests on appeal that the trial court so ruled because no additional facts were set out in Count III in support of Ms. Hargis' unjust enrichment claim. Therefore, if the facts set out in support of Counts I and II were insufficient to prevent summary judgment for JLB on those counts, JLB argues, they also were insufficient to prevent summary judgment on Count III.

█ JLB's reasoning does not support the trial court's grant of summary judgment on Count III. Although the factual basis for Ms. Hargis' third count was the same as that for her first and second counts, the legal basis for her third count, unjust enrichment, or "money had and received," differed. The elements of an unjust enrichment claim are entirely different than those of an unauthorized practice of law claim. Unjust enrichment requires a showing that: "(1) [the plaintiff] conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Howard v. Turnbull,* 316 S.W.3d 431, 436 (Mo.App.2010).

Here, the basis of Mr. Hargis' unjust enrichment claim is that JLB charged her fees for services it did not perform. This claim does not stand or fall on whether she also has a claim for the unauthorized practice of law on the facts alleged. Indeed, Ms. Hargis' motion to amend Count III makes it evident that Count III largely is an alternative basis for recovery to Counts I and II; she argues that if, as JLB claims, it did not procure or assist in drawing the legal documents in this case, then it was unjustly enriched by charging her for services it did not perform.[11] JLB's motion for summary judgment did not make clear that JLB was seeking summary judgment on Ms. Hargis' unjust enrichment claim, and the statement of uncontroverted facts did not support entry of summary judgment on that claim. As a

---

11. JLB claims that Ms. Hargis did not timely raise its failure to set out facts supporting summary judgment on Count III. But until the trial court granted summary judgment on that count, Ms. Hargis could not have known that the trial court would grant summary judgment on it based on a motion addressing only the claims of unauthorized practice of law. Once the court entered that judgment, Ms. Hargis did raise this issue in her motion to amend, vacate, correct or modify judgment, in which she claimed "that Defendant's Motion [for summary judgment] never addressed Plaintiff's common law count for money had and received, and that Plaintiff was never afforded the opportunity to perform discovery with respect to that count." In any event, the trial court is permitted to grant summary judgment under Rule 74.04 only when the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The record did not so show here.

result, Ms. Hargis has not yet completed her discovery on that count because JLB's summary judgment motion did not make her aware of the need to do so. Therefore, the trial court erred in granting summary judgment on Count III.[12]

## V. CONCLUSION

The trial court erred in granting JLB summary judgment on Count III because JLB did not show it is entitled to judgment on that count as a matter of law. The judgment is reversed as to Count III. In all other respects, the judgment is affirmed. The case is remanded.

RUSSELL, FISCHER and PRICE, JJ., and PRITCHETT, Sp.J., concur; TEITELMAN, C.J., concurs in part and dissents in part in separate opinion filed; BRECKENRIDGE, J., concurs in opinion of TEITELMAN, C.J. DRAPER, J., not participating.

RICHARD B. TEITELMAN, Chief Justice.

The principal opinion holds that there are no genuine issues of material fact or law precluding summary judgment on Ms. Hargis' claim that JLB engaged in the unauthorized practice of law. Viewing the record in the light most favorable to Ms. Hargis, and providing her with the benefit of all reasonable inferences from the record, I would hold that summary judgment is not appropriate. Therefore, I respectfully dissent from the principal opinion to the extent it holds that summary judgment

was appropriate with respect to Counts I and II. I concur in the principal opinion's reversal of summary judgment with respect to Count III.

"This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Parktown Imports, Inc. v. Audi of America, Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009). Each word, clause, sentence and provision of a statute is presumed to have meaning and effect. *Neske v. City of St. Louis*, 218 S.W.3d 417, 424 (Mo. banc 2007). Further, it is "presumed that the legislature did not insert idle verbiage or superfluous language in a statute." *Civil Serv. Comm'n v. Bd. of Aldermen*, 92 S.W.3d 785, 788 (Mo. banc 2003) (quoting *Hyde Park Housing Partnership v. Director of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993)).

Section 484.010.2, RSMO 2000, defines the "law business" as "the drawing or the procuring of or assisting in the drawing for a valuable consideration" any legal document. To give each word in the statute meaning and effect, the independent statutory concepts of "drawing," "procuring" and "assisting in the drawing" must be practically distinguishable. The term "procuring" must mean something different than the terms "drawing" and "assisting in the drawing." This means that one can procure a legal document without any participation in drawing the document. Therefore, as the principal opinion notes, while "merely gathering information for

---

**12.** Because this Court is reversing the grant of summary judgment on Count III and remanding, Ms. Hargis' claim that the trial court abused its discretion by refusing to allow her to amend her petition as to that count prior to entry of summary judgment and some six weeks before trial is moot, as Ms. Hargis will have a new opportunity to seek leave to amend on remand. *State ex rel. Kansas City S. Ry. Co. v. Nixon*, 282 S.W.3d 363, 366 (Mo.

banc 2009) (holding that leave to amend should be granted liberally); *see also* Rule 55.33(a) (leave to amend "shall be freely given when justice so requires."). For similar reasons, this Court also declines to reach the issue raised by JLB on appeal as to whether the pendency of similar claims in federal court affects Ms. Hargis' ability to bring these claims in state court, an issue not addressed in JLB's summary judgment motion.

use in a legal document does not necessarily constitute the unauthorized practice of law," *In re Mid–America Living Trust Assocs., Inc.,* 927 S.W.2d 855, 865, there could be circumstances in which gathering legal information to produce legal documents for a fee amounts to "procuring" legal documents.

The principal opinion concludes that the record establishes conclusively that JLB did not "procure" legal documents because it did nothing more than passively gather information that Document Systems then used to prepare legal documents. The characterization of JLB's role as passive is not compelled by the record, particularly when Ms. Hargis is afforded the benefit of all reasonable inferences from the record as required by the standard of review. *See ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

JLB's business is acquiring or "procuring" mortgages on behalf of its customers. Creating a mortgage loan requires a number of necessary legal documents. A plausible reading of the facts so far developed in this case indicates that JLB procures these documents for its customers by specifically requesting the information necessary to create the legal documents underlying the mortgage. JLB does not gather passively whatever information its customers see fit to offer. Instead, JLB guides the process for the sole purpose of ensuring that Document Systems has the necessary information to draw the required legal documents. Document Systems then relays those documents to JLB so that JLB can facilitate closing the loan and finalizing the legal obligations of the borrower and lender. JLB was actively involved in obtaining or "procuring" for Ms. Hargis the legal documents necessary to finalize her mortgage loan. While JLB may not be the party "drawing" the legal documents, the record does not establish conclusively that JLB does not participate in "procuring" those documents for Ms. Hargis.

The principal opinion further concludes that the record shows that JLB did not charge any fee relating to the preparation of any legal document. All the record shows is JLB's vice president, John Paci, testified that none of JLB's fees relates to the preparation of legal documents. While Mr. Paci and JLB may choose not to attribute any of the fees charged to the preparation of legal documents, commercial reality suggests otherwise. It is highly unlikely that JLB simply absorbs the costs of Document Systems' preparation of the legal documents. It is almost certain that JLB wisely elects to pass these costs on to its customers in the form of various processing and administrative fees. Because JLB is a business and not a public interest organization or charity, it is also virtually certain that the various fees include a profit margin to compensate JLB for the time and effort spent procuring legal documents for and from Document Systems.

Viewing the record in the light most favorable to Ms. Hargis, the record at this stage of the litigation supports her theory that JLB charges its customers a variety of fees totaling thousands of dollars for the express purpose of procuring for and from Document Systems all of the legal documents necessary to close the mortgage loan. Therefore, I would reverse the summary judgment on Counts I and II.