

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| THOMAS BINKLEY, HARLENE J. BINKLEY, ROLAND E. STURHAHN, and SUSAN J. STURHAHN, | ) ) ) ) | No. ED100044 |
| Appellants, | ) ) | Appeal from the Circuit Court of St. Louis County |
| vs. | ) ) | |
| AMERICAN EQUITY MORTGAGE, INC., | ) ) ) | Honorable Tommy W. DePriest, Jr. |
| Respondent. | ) ) ) | Filed: February 18, 2014 |

### *Introduction*

Thomas and Harlene Binkley and Roland and Susan Sturhahn (Plaintiffs) appeal the trial court's grant of summary judgment to American Equity Mortgage, Inc. (AEM) on their claims of: (1) "doing law business" in violation of Section 484.010.2;[1] (2) violation of the Missouri Merchandising Practices Act (MPA); and (3) unjust enrichment. On appeal, Plaintiffs claim the trial court erred in granting summary judgment to AEM because there were genuine issues of disputed material fact as to elements of each claim. We affirm.

### *Factual and Procedural Background*

Plaintiffs Thomas and Harlene Binkley entered into a transaction with AEM to obtain a residential mortgage loan for property located in Fenton. In association with the loan, AEM prepared a HUD-1 settlement statement, which reflected an origination charge of $2,320.93. An

---

[1] All statutory references are to RSMo 2000, as supplemented.

addendum to the Binkleys' HUD-1 enumerated the components of the origination charge, listing fees for Missouri Electronic Registration Systems (MERS), loan origination, processing, underwriting, wire, and administration. The HUD-1 did not reflect a charge for document preparation.

Plaintiffs Roland and Susan Sturhahn also entered into a transaction with AEM to obtain a residential mortgage loan for property located in O'Fallon. In association with the loan, AEM prepared a HUD-1 settlement statement, which included a loan origination fee of $2,238.00. The HUD-1 included a line labeled "Document preparation to," which remained blank. In connection with the Binkleys' and Sturhans' loan transactions, AEM obtained notes, deeds of trust, and/or planned unit development (PUD) riders, which it admitted "were generated electronically from software [AEM] licensed from Wolters Kluwer Financial Services, Inc."

In 2012, Plaintiffs filed a class action petition against AEM.[2] In Count I, Plaintiffs alleged that AEM engaged in the "unauthorized practice of law or doing law business"[3] when it "procured or assisted in the drawing for a valuable consideration of legal documents, including deeds of trust, notes, and/or a PUD rider. . . ." In Count II, Plaintiffs alleged that, by engaging in law business, AEM committed an unlawful practice in violation of the MPA. In Count III, Plaintiffs contended that AEM was unjustly enriched because it charged Plaintiffs for services it did not perform or did not perform lawfully.

AEM filed a motion for summary judgment, asserting that "[b]ecause there are no genuine issues of material fact, AEM is entitled to judgment as a matter of law as to all claims." In regard to Plaintiffs' Count I, AEM asserted that "the uncontroverted facts establish that AEM

---

[2] In their original petition, Plaintiffs also sued Wolters Kluwer Financial Services, Inc. Plaintiffs voluntarily dismissed their claims against Wolters without prejudice.

[3] In their brief, Plaintiffs note that, although they labeled Count I, "Engaging in Unauthorized Practice of Law or Doing Law Business," "this case is really about 'doing law business'. . . ."

2

did not charge Plaintiffs a separate, additional charge for document preparation."[4] Additionally, AEM contended that because Plaintiffs' MPA and unjust enrichment claims were based on the same conduct underlying Plaintiffs' unauthorized practice of law claim, those claims also failed as a matter of law.

Plaintiffs filed responses to both AEM's motion for summary judgment and AEM's statement of facts in support of its motion. The trial court granted AEM summary judgment on all three counts. Plaintiffs appeal.

### *Standard of Review*

We review an entry of summary judgment *de novo*. ITT Commercial Fin. Corp. v. Mid.-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. Id.; Rule 74.04(c). A defending party may demonstrate entitlement to summary judgment by showing: (1) facts negating one or more elements of the plaintiff's claim; (2) that the plaintiff cannot and will not be able to prove one or more elements of its claim; or (3) that there is no material dispute about each fact necessary to establish an affirmative defense. Humane Society of U.S. v. Mo., 405 S.W.3d 532, 535 (Mo. banc 2013). When reviewing a trial court's grant of summary judgment, we view the record in the light most favorable to the party against whom summary judgment was entered. ITT, 854 S.W.2d at 376.

### *Discussion*

In their first point on appeal, Plaintiffs claim the trial court erred in granting summary judgment for AEM on Plaintiffs' action for "doing law business" because a genuine issue of

---

[4] In its memorandum in support of its motion for summary judgment, AEM conceded that it procured legal documents.

material fact existed as to whether AEM "procured" (within the meaning of Section 484.010.2) the legal documents underlying Plaintiffs' real estate loan transactions.[5]  More specifically, Plaintiffs contend that, because AEM admitted procuring the documents at issue from software licensed and purchased from Wolters, Plaintiffs were not required to prove that AEM charged a separate fee for preparation of legal documents in order to establish a claim for "doing law business."[6]  AEM counters that summary judgment was proper because Plaintiffs failed to contravene AEM's averment that it neither charged a separate fee nor varied its customary charges for preparation of legal documents.

Missouri restricts the practice of law solely to licensed attorneys to "protect the public from being advised or represented in legal matters by incompetent or unreliable persons." Hargis v. JLB Corp., 357 S.W.3d 574, 577-78 (Mo. banc 2011) (quoting Hulse v . Criger, 247 S.W.2d 855, 857-68 (Mo. banc 1952)).  Section 484.010.2 defines "law business" as:

> advising or counseling for a valuable consideration of any person, firm, association, or corporation as to any secular law *or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights* or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to obtain or securing or tending to secure for any person, firm, association or corporation any property or property rights whatsoever.

Mo. Rev. Stat. § 484.010.2 (emphasis added).  The Supreme Court has interpreted this statute to prohibit a company and its non-lawyer agents, servants, employees, and trust associates from: (1) "drawing, preparing, or assisting in the preparation of trust workbooks, trusts, wills, and powers of attorney"; (2) *"for valuable consideration,* for Missouri residents without the direct

---

[5] Promissory notes and deeds of trust constitute legal documents for purposes of the unauthorized practice of law or doing law business.  Eisel v. Midwest BankCentre, 230 S.W.3d 335, 338 (Mo. banc 2007).

[6] We note the inherent contradiction in Plaintiffs' claim that there was a genuine issue of material fact as to whether AEM procured legal documents and their allegation that AEM admits it procured legal documents.

4

supervision of an independent licensed attorney selected by and representing those individuals." Eisel v. Midwest BankCentre, 230 S.W.3d 335, 339 (Mo. banc 2007) (emphasis in original) (citing In re Mid-Am. Living Trust Assocs., Inc., 927 S.W.2d 855, 781 (Mo. banc 1996)).

Plaintiffs rely on the Supreme Court's decision in Hargis to support the proposition that, where a non-attorney defendant admits to the procurement of legal documents, the plaintiff need not prove that the defendant charged the plaintiff a separate additional fee or varied its customary charges for procuring those documents. In Hargis, the homeowner engaged JLB, a mortgage broker, to obtain refinancing for her home. 357 S.W.3d at 576. JLB provided the homeowner the following services: matching her with a sponsoring lender; preparing her loan application and other financial disclosure documents; gathering information necessary for title companies, investors, and/or a California company called Document Systems; and transferring the completed documents to the homeowner. Id. at 576-77. In exchange for its services, JLB charged the homeowner processing and administrative fees. Id. at 577.

The homeowner filed suit against JLB alleging, among other claims, the unauthorized practice of law in violation of Section 484.010. Id. Specifically, the homeowner claimed that JLB procured or assisted in drawing legal documents for valuable consideration. Id. at 580. JLB filed a motion for summary judgment asserting that: (1) it did not procure or assist in the drawing of legal documents; and (2) it did not charge the homeowner for the provision of legal services. Id. at 577. The trial court granted JLB summary judgment, and the homeowner appealed. Id.

On transfer from the court of appeals, the Supreme Court affirmed summary judgment for JLB on the homeowner's claim for the unauthorized practice of law. Id. at 577, 587. In its

5

analysis, the Court considered whether JLB "procured"[7] legal documents when it helped the homeowner to obtain a note and deed of trust by providing financial information to third parties who then prepared those documents.[8]  Id. at 580.  The Court reviewed the record and concluded that the evidence "show[ed] only that JLB gathered documents about [the homeowner's] finances and transferred them to title companies, investors or Document Systems, which used the documents to prepare her note and deed of trust."  Id. at 583.  The evidence also revealed that "JLB neither charged a separate document preparation fee for preparing the note and deed of trust nor disguised such a fee as part of an administrative or processing charge."  Id.  Because the record did not permit a finding that JLB procured legal documents, the Court held that summary judgment was appropriate on the homeowner's claim for unauthorized practice of law.  Id.

Plaintiffs erroneously maintain that the Hargis court "declare[d] that charging a separate fee or varying customary charges…were not required for the claim of 'procuring' legal documents."[9]  In other words, Plaintiffs assert that the Hargis decision reduced a "doing law business" claim to proof of "actively" gathering and/or preparing legal documents and dispensed with the "valuable consideration" element.  Contrary to Plaintiffs' interpretation, Hargis did not

---

[7] As an initial matter, the Court considered "what constitutes 'procurement'" and concluded that: "procurement requires active involvement in the obtaining of some object, person or purpose; it involves acting to bring about or contriving to cause an effect. . . .[I]t involves more than merely passively gathering or obtaining information, data or documents from third parties or other sources."  Id. at 581.

[8] The Court also considered whether JLB procured legal documents when it gathered copies of pre-existing legal documents and assisted the homeowner in filling out her loan application and other financial disclosures.  Id. at 580.  The Court concluded that these services did not constitute procurement of legal documents.  Id. at 582, 585.

[9] In support of this statement, Plaintiffs cite out of context the following quotation:  "[I]f a non-attorney procured or assisted in the drawing of a note, mortgage or deed of trust without the review or supervision of an attorney licensed to practice in Missouri, it would constitute the unauthorized practice of law."  Hargis, 357 S.W.3d at 582.  Although this particular passage focuses solely on the procurement element of doing law business, it in no way eliminated the second element, which is the receipt of valuable consideration.

6

eliminate the requirement that a plaintiff prove a defendant either charged a separate fee or varied its customary charges for preparation of legal documents. In fact, the Court held that the record provided "no basis for the trial court to find that JLB was involved in procuring" legal documents or that "title companies, investors and/or Document Systems acted as its agent in so doing" because "JLB neither charged a separate document preparation fee for preparing the note and deed of trust nor disguised such a fee as part of an administrative or processing charge."[10] Id. at 583.

Plaintiffs further assert that the undisputed evidence that AEM "paid valuable consideration to Wolters" for the production of legal documents and "received valuable consideration from [Plaintiffs]" was sufficient to prove that AEM engaged in law business. In support of this proposition, Plaintiffs rely on Chief Justice Teitelman's dissenting opinion in Hargis and the majority's response thereto. The dissent cautioned that "there could be circumstances in which gathering legal information to produce legal documents *for a fee* amounts to 'procuring' legal documents.'" 357 S.W.3d at 588 (Teitelman, C.J., dissenting) (emphasis added). The majority agreed in dicta that "if JLB paid a third party to draft or assist in drafting documents, then that party would be acting as JLB's agent and JLB would be responsible either for directly assisting in drafting or for procuring the documents." Id. at 584 n.9.

---

[10] The Court explained:

> [T]he record simply does not permit a finding of any conduct by JLB that could be found to constitute procuring or assisting in drawing the note or deed of trust or playing an active role in determining the content of these documents. Neither is there evidence JLB charged a fee or varied its charges for their drawing by others at its behest or that it did more than transmit information provided by others to third parties.

Hargis, 357 S.W.3d at 583.

7

The Hargis Court recognized that a non-attorney might indirectly procure legal documents through a third party. It did not, contrary to Plaintiffs' reading, suggest that procuring, i.e. drawing or playing an active role in determining the content of legal documents, and not charging the consumer a fee for those documents, constitutes the unauthorized practice of law. Indeed, the majority upheld summary judgment for JLB because the "record show[ed]. . . the third parties did not act as agents of JLB and JLB received no consideration for the drawing of the note and deed of trust." Id. at 584; see also Schreiner v. Quicken Loans, Inc., No. 4:12CV1193 CDP, 2013 WL 147842, *2 (E.D.Mo. Jan. 14, 2013) ("The Court in Hargis repeatedly notes the importance of charging or varying fees as an element of the unauthorized practice of law." ); Klingel v. DAS Acquisition Co., LLC, No. 4:12CV1194 JCH, 2013 WL 490963, *3 (E.D.Mo. Feb. 8, 2013).

Having reviewed the evidence in the light most favorable to Plaintiffs, we conclude that the trial court did not err in granting AEM summary judgment.[11] In its motion for summary judgment, AEM asserted that Plaintiffs failed to show a genuine issue of material fact regarding whether AEM charged Plaintiffs a fee for preparation of legal documents. Plaintiffs did not contest this claim in their response to AEM's motion for summary judgment. Rather, Plaintiffs insisted: "Plaintiffs do not need to show a factual dispute over whether AEM charged a separate

---

[11] We again note that, in their point relied on, Plaintiffs assert, in a contradictory manner, both that "a genuine issue of material fact existed as to whether American Equity 'procured' the Legal Documents" and that American Equity "admitted procuring documents from software it paid for and licensed from document company Wolters. . . ." In light of AEM's answer to interrogatories that "[t]he notes, deeds of trust and PUD rider used in Plaintiffs' loan transaction were generated electronically from software [AEM] licensed from [Wolters]," we conclude there is no genuine issue of material fact as to the procurement element of Plaintiffs' law business action. At issue before the trial court was the second element of Plaintiff's law business action – valuable consideration. Based on the record before us, we likewise find no genuine issue of material fact relating to this element.

8

additional fee for document preparation or varied its customary charges based upon whether legal documents were prepare[d.]"

Furthermore, in AEM's statement of uncontroverted material facts in support of its motion for summary judgment, AEM alleged that:  the HUD-1 settlement statements "set[] forth each and every fee charged" in connection with the residential mortgage loan transactions; the HUD-1s included a "loan origination fee"; the loan origination fees "compensated AEM for issuing the loan and did not compensate for the preparation of any legal documents, including without limitation any deeds of trust, promissory notes and/or planned unit development riders." In response, Plaintiffs denied these statements of uncontroverted material facts without "specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial" as required by Rule 74.04(c)(2).  A response that fails to provide support for its denial "is an admission of the truth of that [statement of fact.]"  Rule 74.04(c)(2).

Finally, the HUD-1 settlement statements attached to the Plaintiffs' petition reflect that AEM did not charge a "document preparation" fee and Plaintiffs conceded that they could not "prove that AEM charged them an itemized preparation fee on their HUD-1s. . . ."   The absence of any evidence in the record that AEM charged a fee for the documents in question is fatal to Plaintiffs' "doing law business" claim.  See Hargis, 357 S.W.3d at 584 n.9 ("[S]ummary judgment must be granted or denied based on the record before the Court, not based on speculation that evidence not in the record must exist.").  Because Plaintiffs failed to demonstrate a genuine issue of material fact regarding whether AEM charged a separate fee or varied its customary charges for preparation of legal documents, the trial court did not err in granting summary judgment for AEM.    Point denied.

In their second point on appeal, Plaintiffs claim the trial court erred in granting AEM summary judgment on Plaintiffs' claim that AEM violated the Missouri Merchandise Practicing Act.[12] More specifically, Plaintiffs contend that their MPA claim "was not entirely derivative of Count I, in that [Plaintiffs] established American Equity engaged in an 'unfair practice' as defined in 15 Code of State Regulations § 60-8.020(1)(A)-(B)."[13] AEM counters that summary judgment was proper because the MPA claim is "based upon the same unauthorized practice of law claim for which summary judgment was properly granted."

A claim under the MPA requires that a plaintiff prove that he or she: "(1) purchased merchandise (which includes services) from the defendant[] (2) for personal, family, or household purposes and (3) suffered an ascertainable loss of money or property (4) as a result of an act declared unlawful under section 407.020." Edmonds v. Hough, 344 S.W.3d 219, 223 (Mo.App.E.D. 2011). Plaintiffs alleged that they suffered an ascertainable loss "[a]s a direct result of [AEM's] conduct… in the amount of at least the amount of improper fees or payments." In our analysis of Plaintiffs' first point relied on, we concluded that Plaintiffs failed to

---

[12] The MPA provides:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…in or from the state of Missouri, is declared to be an unlawful practice.

Mo. Rev. Stat. § 407.020.1.

[13] 15 CSR 60.8.020(1) provides:
   An unfair practice is any practice which –
   (A) Either –
       1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or
       2. Is unethical, oppressive or unscrupulous; and
   (B) Presents a risk of, or causes, substantial injury to consumers.

contravene AEM's assertion that it did not charge Plaintiffs a fee for preparation of legal documents. As such, Plaintiffs failed to demonstrate a genuine issue of fact as to whether they suffered an ascertainable loss of money or property. See, e.g., Amburgy v. Express Scripts, Inc., 671 F.Supp.2d 1046, 1057 (E.D. Mo. 2009) ("One who never pays anything of value cannot be said to have suffered damage under the MMPA by reason of any unlawful practice."). Point denied.

In their third and final point on appeal, Plaintiffs claim the trial court erred in granting AEM summary judgment on Plaintiffs' unjust enrichment claim because AEM "did not establish undisputed material facts addressing the essential elements of an unjust-enrichment claim." In response, AEM asserts that summary judgment was proper because Plaintiffs' unjust enrichment claim "is based upon the same unauthorized practice of law claim for which summary judgment was properly granted."

"To establish the elements of an unjust enrichment claim, the plaintiff must prove that (1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." Howard v. Turnbull, 316 S.W.3d 431, 436 (Mo.App.W.D. 2010). The inequitable circumstances alleged in Plaintiffs' unjust enrichment claim are that AEM benefited by "charg[ing] Plaintiffs for services it did not perform or did not perform lawfully." This claim therefore depends on Plaintiffs having directly paid a fee for the preparation of legal documents. See Schreiner, 2013 WL 147842 at *2. In light of our conclusion that Plaintiffs presented no evidence countering AEM's assertion that it did not charge Plaintiffs for preparation of legal documents, no genuine issue exists regarding whether Plaintiffs conferred a benefit to AEM. Because there is no issue

11

of material fact, the trial court did not err in granting summary judgment in favor of AEM on Plaintiffs' unjust enrichment claim. Point denied.

### *Conclusion*

The judgment of the trial court is affirmed.

_____
Patricia L. Cohen, Judge

Lisa S. Van Amburg, P.J., and
Gary M. Gaertner, Jr., J., concur.