

# In the Missouri Court of Appeals
# Eastern District
## DIVISION ONE

| | | |
|---|---|---|
| VELMA L. MITCHELL, TANISHA L. WINSTON AND KAYLA SANDERS, | ) ) | No.ED107431 |
| | ) | Appeal from the Circuit Court |
| Appellants, | ) | of St. Louis County |
| | ) | |
| vs. | ) | Hon. Stanley J. Wallach |
| | ) | |
| J&M SECURITIES, LLC AND SHANNON METZGER, | ) ) ) | |
| | ) | Filed: |
| Respondents/Cross-Appellants. | ) | October 22, 2019 |

Velma Mitchell, Tanisha Winston and Kayla Sanders (collectively "Plaintiffs") appeal from the judgment dismissing their petition for failure to state a claim against J&M Securities, LLC and Shannon Metzger (collectively "Defendants"). Defendants cross appeal, challenging the denial of their motion for attorney fees. We affirm.

All of the claims in Plaintiffs' petition were premised on allegations that Defendants engaged in the unauthorized practice of law. J&M is a limited liability company, solely owned by Metzger, and it holds itself out as a "professional judgment enforcement firm." J&M is not a law firm, and Metzger is not licensed to practice law in Missouri. According to the petition, J&M obtained judgments through collection lawsuits or by assignment. With respect to Plaintiff Mitchell, J&M obtained a default judgment against her in a collection lawsuit arising from unpaid rent. Plaintiffs Winston and Sanders also had unpaid rent, resulting in consent judgments that were allegedly assigned to J&M. To collect on each of these judgments, Metzger "filed a garnishment application and

interrogatories" on behalf of J&M. The requests were directed to Mitchell's bank account and Winston's and Sanders's employers, respectively. None of these documents were signed by an attorney. Copies of these garnishment applications and interrogatories were attached to the petition.

Plaintiffs alleged that because J&M is a limited liability company, only a Missouri licensed attorney was authorized to "submit court filings" on its behalf. The petition alleged that because he was not a licensed attorney, Metzger's "filing of garnishment applications and interrogatories" on J&M's behalf was the unauthorized practice of law. Plaintiffs alleged in Count I that Defendants' unauthorized practice of law constituted a deceptive practice, misrepresentation, false promise or unfair practice in violation of the Missouri Merchandising Practices Act ("MMPA"). In Count II, Winston and Sanders sought to hold Defendants liable for "money had and received," alleging that it would be unjust for Defendants to retain the money that had been withheld from those Plaintiffs' wages via Metzger's unauthorized practice of law. Plaintiffs sought to establish a class action, asserting that Defendants had engaged in this practice in hundreds of cases in Missouri.

Defendants filed a motion to dismiss for failure to state a claim. Defendants argued that, according to *Division of Employment Security v. Westerhold*, 950 S.W.2d 618 (Mo. App. E.D. 1997), seeking a garnishment is not the practice of law and therefore the entire theory of liability in both counts failed. The court agreed, granted the motion to dismiss and ordered the petition dismissed with prejudice. Defendants moved, as the prevailing party, for attorney fees under the MMPA on the ground that Plaintiffs had pursued vexatious and frivolous claims because they directly contradicted the clear holding of *Westerhold*. The court entered an amended judgment, adding that the lawsuit was not

2

frivolous and there was no basis for awarding attorney fees. This appeal and cross-appeal followed. Plaintiffs challenge the dismissal of their petition, and Defendants challenge the denial of attorney fees.

Motion to Dismiss

We review the trial court's grant of a motion to dismiss de novo and must affirm if dismissal was appropriate on any ground supported by the motion. *A.F. v. Hazelwood School District*, 491 S.W.3d 628, 631 (Mo. App. E.D. 2016). A motion to dismiss for failure to state a claim is solely a test of the adequacy of the plaintiff's petition. *Id.* The averments in the petition are taken as true, and all reasonable inferences therefrom are liberally construed in the plaintiff's favor. *Id.* When the facts alleged are insufficient as a matter of law, dismissal is proper. *Missouri Municipal League v. State*, 489 S.W.3d 765, 768 (Mo. banc 2016). Because we conclude that Metzger's acts as alleged in the petition did not, as a matter of law, constitute the unauthorized practice of law, dismissal of the petition—based entirely on that theory—was proper.

J&M is a limited liability company, which is a statutory entity. *See* Sections 347.010 to 347.187 ("Missouri Limited Liability Company Act"). A statutory entity cannot act at all except through individuals acting on its behalf. *Naylor Senior Citizens Housing, LP v. Side Construction Company, Inc.*, 423 S.W.3d 238, 243 (Mo. banc 2014). No individual can practice law on behalf of another without being a licensed attorney. *Id.* at 244. Thus, while an individual can represent herself without a license to practice law—because she is not, in that situation, representing another—only a licensed attorney can act on an LLC's behalf in legal matters. *See id.* at 244-45.

Metzger is not a licensed attorney and he acted on behalf of the LLC, not himself, when he submitted the applications for garnishments and accompanying interrogatories.

3

Plaintiffs insist that because garnishment is a "legal matter," Metzger was unauthorized to act *in any way* on J&M's behalf in the garnishment proceedings and our inquiry ends here. We disagree. As the Court in *Naylor* and other cases cited herein did, we must analyze the particular acts in which the non-attorney engaged to determine if they fit within the scope of the practice of law as defined by our judiciary. *Id.* at 245. In *Naylor*, little analysis was actually required because the act in question was the filing of an original petition, and "no matter what else may or may not be included . . . the act of appearing in court to assert or defend claims on behalf of another lies at the very heart of the practice of law." *Id.* (noting that "[a] precise and comprehensive definition of the practice of law has proved elusive over the last two centuries"). But this case does not involve the filing of a petition, and we are not led "inescapably" to the conclusion that it is the practice of law as was the Court in *Naylor*. And, unlike that Court, we cannot avoid a deeper look into the "elusive" definition of the practice of law.

The judiciary is the sole arbiter of what constitutes the practice of law. *Hargis v. JLB Corporation*, 357 S.W.3d 574, 578 (Mo. banc 2011). The legislature's definitions relating to the practice of law—unchanged since 1915—"merely act in aid of [the Supreme] Court's regulation of the practice of law and cannot supersede or detract from, the power of the judiciary to define and control the practice of law." *Id.* (internal quotation marks and citations omitted). Nonetheless, the Supreme Court routinely uses the statutory definitions in Section 484.010 "as a reference point for determining the scope of the practice of law." *Id.* That statute provides:

1. The "practice of the law" is hereby defined to be and is the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee or any body, board, committee or

4

commission constituted by law or having authority to settle controversies.

2. The "law business" is hereby defined to be and is the advising or counseling for a valuable consideration of any person, firm, association, or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to obtain or securing or tending to secure for any person, firm, association or corporation any property or property rights whatsoever.

Decades ago, the Supreme Court also crafted its own definition—not intended to be all-inclusive—of the practice of law, which encompasses elements from both of the above statutory definitions:

[O]ne is engaged in the practice of law when he, for a valuable consideration, engages in the business of advising persons, firms, associations, or corporations as to their rights under the law, or, appears in a representative capacity as an advocate in proceedings pending or prospective, before any court, commissioner, referee, board, body, committee, or commission constituted by law or authorized to settle controversies, and there, in such representative capacity, performs any act or acts for the purpose of obtaining or defending the rights of their clients under the law. Otherwise stated, one who, in a representative capacity, engages in the business of advising clients as to their rights under the law, or while so engaged, performs any act or acts either in court or outside of court for that purpose, is engaged in the practice of law.

*Clark v. Austin*, 101 S.W.2d 977, 982 (Mo. 1937).[1]

Under the above definitions, it is the *character* of the acts that is dispositive under these definitions, not whether the acts occurred in or out of court. *Reed v. Labor and Industrial Relations Commission*, 789 S.W.2d 19, 21 (Mo. banc 1990), *receded from on other grounds in Haggard v. Division of Employment Security*, 238 S.W.3d 151, 155 (Mo.

---

[1] These are "practically the same" definition, with some notable differences in terminology that are not dispositive here, as explained in footnote 9 of this Opinion. *State ex rel. McKittrick v. C. S. Dudley & Company*, 102 S.W.2d 895, 899 (Mo. 1937); *see Liberty Mutual Insurance Company v. Jones*, 130 S.W.2d 945, 955 (Mo. 1939) (noting differences).

banc 2007); *see also Hoffmeister v. Tod*, 349 S.W.2d 5, 13 (Mo. 1961) ("[T]he character of the act performed, and not the place where it is performed, is the controlling factor"). In *Reed*, the Court stated that the definition of the practice of law—citing to both the judicial and statutory definitions above—encompassed "a broad range of activities," but it is "the character of the acts done . . . that constitutes the decisive factor in determining whether the acts fall within the practice of law." 789 S.W.2d at 21. To determine the character of the acts at issue there, the Court looked to whether they involved any legal skill or knowledge. *Id.* The Court found that submitting applications to the Labor and Industrial Relations Commission for review of unemployment benefits decisions were not "merely ministerial acts." *Id.* Rather, the statutes governing that review "require[d] the applicant to assert facts and legal theories supporting reversal, which requires some degree of legal skill and knowledge." *Id.* The Court found that applying for review required advocating a legal position, namely in that case that the claimant was not entitled to benefits because she had been discharged due to "misconduct connected with work," which was a legal standard. *Id.* As such, the non-attorney employees who filed the applications on behalf of the corporation was asserting the corporation's legal rights and, because they were not licensed, that conduct constituted the unauthorized practice of law. *Id.* at 23.

Following *Reed*, our courts have found that representational activities involving the application of legal knowledge and skill and the assertion of legal rights and claims constitute the practice of law. *See Strong v. Gilster Mary Lee Corporation*, 23 S.W.3d 234, 239 (Mo. App. E.D. 2000) ("there can be no doubt" preparing and filing application for review in workers compensation case and appearing at hearing involved application of legal skill and knowledge and assertion of legal rights). On the other hand, when the acts in question involve no legal skill or knowledge, they are not the practice of law. In *State*

6

*ex rel. Missouri Department of Social Services v. Administrative Hearing Commission*, the Western District addressed the act of petitioning the Administrative Hearing Commission for review of a Medicaid benefits reimbursement decision. 814 S.W.2d 700 (Mo. App. W.D. 1991). Unlike the application in *Reed*, that court found "no requirement that the applicant for review specify the grounds upon which he claims the decision of the Department of Social Services was erroneous." *Id.* at 702. Rather, the applicant only had to identify the party appealing, identify the decision and request an appeal therefrom. *Id.* The AHC was then required to "take cognizance of the appeal and proceed;" it had no discretion to reject the appeal if the applicant failed to state grounds for relief. *Id.* Thus, the court concluded, drafting and filing the petition for review in that case required "no legal skill or legal training." *Id.* As such, the non-lawyer employees of the respective hospital providers who filed the petitions for review had not engaged in the practice of law. *Id.*

In *Westerhold*—relied on by Defendants and the trial court in this case—we applied the above principles to the act of requesting a garnishment. 950 S.W.2d at 619. There, the Division of Employment Security assessed Jeffrey Westerhold, an employer, for unpaid contributions to the State's unemployment fund. *Id.* Westerhold appealed, and the decision was affirmed at all stages of the administrative review process and on appeal to the circuit court. *Id.* The chief of contributions at the Division then filed in the circuit court a certificate of assessment, as required by Section 288.190, which specified for the court the amount due to the Division. *Id.* Years later, another agent of the Division filed a request for garnishment of Westerhold's wages, and a writ of garnishment issued. *Id.* Westerhold moved to quash the writ on the ground that the non-attorneys who filed the

7

certificate of assessment and request for garnishment on behalf of the Division had engaged in the unauthorized practice of law. *Id.* at 619-20.

We concluded that, unlike *Reed*, neither filing a certificate of assessment nor requesting garnishment required "any legal skill or knowledge." *Id.* at 621. As to the certificate of assessment, that document "merely recited" the amounts due, the finality of the order of assessment and the fact that notice had been served on the employer. *Id.* "[S]imply drafting and filing" that document did not constitute the practice of law. *Id.* (citing *Department of Social Services*, 814 S.W.2d 700). In finding that the request for garnishment did not require any legal skill or knowledge, we stated that garnishment is a form of execution, which is issued "as a matter of course," and the issuance is a ministerial act. *Id.* "Furthermore," we pointed out that in the particular case of collecting delinquent contributions to the unemployment fund, an "agent" of the Division is expressly authorized by statute to request issuance of execution upon the certificate of assessment. *Id.*[2] We also stated that "Division's agent filed no interrogatories or other pleadings that would constitute the practice of law." *Id.*

The request in *Westerhold* was filed in 1996, and at that time Rule 90.03 stated only that "If a party *so requests*, a notice of garnishment and summons to garnishee shall be included by the clerk when an attachment or execution is issued." Rule 90.03 (1996) (emphasis added). It is not clear—from this rule or any other authority involving requests for garnishment under this version of the rule—what, if anything, had to be contained in

---

[2] We agree with Plaintiffs that the statute expressly authorizing an agent to act in *Westerhold* does not apply here. No statute specifically authorizes an agent to file a request for garnishment for an LLC, but neither do any statutes prohibit it. Plaintiffs extrapolate language from Section 525.010 (regarding who may be summoned as a garnishee) and Section 525.020 (regarding how garnishees may be summoned) and assert that these statutes forbid a non-attorney from filing a request for garnishment on behalf of an LLC. Those statutes say no such thing and do not govern the judicial determination of whether that act is the practice of law.

8

this request or whether it had to be in any particular format. Now, the applicable rule

specifies in detail what is required when requesting a garnishment:

> The clerk of the court that entered the judgment shall issue a writ of garnishment if the garnishor files a written request stating:
>
> (a) That a judgment has been entered against the debtor and remains unsatisfied;
>
> (b) The judgment balance, as defined in section 408.040, RSMo, and the amount remaining unpaid;
>
> (c) That the garnishor knows or has good reason to believe that the garnishee is indebted to debtor, that the garnishee is obligated to make periodic payments to debtor, or that the garnishee has control or custody of property belonging to debtor;
>
> (d) The requested return date of the writ, which shall be either 30, 60, 90, 120, 150, or 180 days after the filing of the request for the writ or, alternatively, that a continuous wage garnishment is requested; and
>
> (e) Whether payments made by the garnishee shall be made to the court or to the attorney for the garnishor.

Rule 90.02 (2018).[3] OSCA has made available a pre-printed form, CV 92 "Garnishment

Application and Order," containing spaces and directions for filling in all of the

information required by Rule 90.02. This was the form used by Metzger in this case. It

does not appear that this form, or anything like it, existed for requesting garnishment at the

time and in the Twenty-First Judicial Circuit, where the request was made in *Westerhold*.[4]

Nor does the *Westerhold* opinion contain any details about the contents or format of the

request that was filed in that case.

---

[3] This version of the rule has been the same since July 1, 2016. All of the applications for garnishment in this case were filed after that date.

[4] It appears that some other circuit courts provided forms for requesting garnishment. *See, e.g.,* Twenty-Second Judicial Circuit Local Rule 81.1 (effective 1993) ("clerk shall provide blank forms for requesting execution, garnishment and writs of sequestration").

9

The act of requesting a garnishment now is not necessarily the same as it was then, and without more information about the particular request in that case, we cannot blindly apply the Court's conclusions about that act to the acts in this case. Moreover, contrary to Plaintiffs' contention, *Westerhold* did not address the additional act of submitting interrogatories that occurred here.[5] That case simply does not conclusively answer whether the character of the particular acts done in this case constitute the practice of law.

Plaintiffs argue that Metgzer's conduct fits "squarely" in the definition of "practice of law" as set out in Section 484.010.1, describing his conduct in a way that tracks that statute: they claim that his conduct was an "appearance" before a Missouri court "as an advocate" for the collection of judgments on J&M's behalf, the "performance of an act" in connection with a legal proceeding and the "drawing of" papers or documents in connection with a pending legal proceeding. But, as shown in the cases above, a mechanical application of that definition does not dictate the result here. That is to say, even if we accept Plaintiff's arguments that a garnishment application is a paper or document in a legal proceeding and that the purpose of a garnishment is to advocate for the collection of a judgment, we still must consider the character of the particular act here— completing the application—to determine the legal skill and knowledge involved, as the courts did in *Reed, Department of Social Services* and *Westerhold.* According to the attachments Plaintiffs incorporated into their petition, what Metzger did to complete that application was fill in blanks on a pre-printed standardized form prepared by OSCA. This required no legal skill or knowledge and was not the practice of law.

---

[5] There were no interrogatories filed in *Westerhold*, and the comment made therein—that "Division's agent filed no interrogatories or other pleadings that would constitute the practice of law"—was *dicta* and does not provide binding or persuasive authority on that issue here.

10

CV 92 "Garnishment Application and Order"[6] provides blanks for the applicant to fill in rudimentary information about the case: the parties' names and addresses, the case number, the date and amount of the judgment and the address of the garnishee. The applicant is required to check a box as to what is to be garnished—bank account, bond, wages or "other"—and another box to indicate to whom payments should be made and how. No legal skill or knowledge was needed to provide this basic information. The applicant must attest to a pre-printed statement, consistent with Rule 90.02(a) and (c), that "a judgment has been entered" and "remains unsatisfied" and the applicant "knows or has reason to believe" that the garnishee is obligated to the debtor. Contrary to Plaintiffs' argument, this attestation does not require the applicant to make a legal assertion about the *validity* of that judgment, just its existence.

Rule 90.02(b) requires that the request for garnishment state "the judgment balance, as defined in Section 408.040, and the amount remaining unpaid." The OSCA form provides the applicant with a worksheet to calculate the "amount remaining unpaid." The worksheet begins with a blank for the "judgment balance" and instructs, consistent with Section 408.040, that this means "the total amount of the judgment awarded on the day judgment is entered including, but not limited to, principal, prejudgment interest, and all costs and fees." Contrary to Plaintiffs' contention, the applicant need not engage in a statutory analysis of Section 408.040 in order to enter the judgment balance amount. Underneath the judgment balance line, there are blanks in which the applicant supplies pre-identified amounts—such as post judgment interest and credits—relevant to the ultimate

---

[6] One of the form applications for garnishment that was attached to the petition in this case is set out in full in the appendix to this Opinion for reference. The other forms are similar enough for purposes of our analysis that we need not include them all.

11

calculation of the amount remaining unpaid on the judgment. The applicant just plugs in those numbers and does the math. Basic addition and subtraction does not require legal skill.

The form also leaves a blank space for the applicant to insert "Instructions for Service and/or Garnishee." Here, on the applications regarding Winston's and Sanders's wage garnishments, Metzger included instructions to the garnishee to garnish "all wages," etc.; on the application regarding Mitchell's bank, he instructed the garnishee to garnish "all accounts and safe deposits." Though Plaintiffs point to this section as evidence that the applicant is required to do "more than simply fill in numbers," they do not articulate what legal skill is involved in providing these instructions.

An applicant for a garnishment is required by Rule 90.07(a) to provide written interrogatories asking for information specified in Rule 90.07(a)(1)-(5). CV 110 "Interrogatories to Garnishee" is a pre-printed list of questions seeking that required information. The applicant's *only* task in completing this form is to fill in blanks with the names and addresses of the parties and the garnishee, the case number and where to send the answers and a copy thereof. The garnishor provides these interrogatories to the serving officer after the issued summons and writ are returned to the garnishor by the court so that they can be served simultaneously with the summons and writ; they are only *filed* with the court under certain circumstances. *See* Rule 90.07(a) and (e). We note that *asserting objections* to the answers to these interrogatories may involve more than is required to fill in the form itself, though we express no opinion here as to whether those actions constitute the practice of law. *See e.g.,* Rule 90.07(c) ("The garnishor shall file and serve on the garnishee any exceptions to the interrogatory answers, asserting any objections to the answers and asserting all grounds upon which recovery is sought against the garnishee.")

12

No legal skill, knowledge or discretion was required to fill in any of the information required by either of these forms—only a basic ability to put factual information into the correct box. *See Hargis*, 357 S.W.3d at 585 (concluding that when completing standardized real estate forms that already identified required information, "accuracy, rather than discretion—legal or otherwise—is what is required" and thus was not practice of law). Plaintiffs' arguments to the contrary are not well-taken. They contend that legal skill and knowledge is required for an applicant to be "in a position to properly complete the garnishment papers." Specifically, they argue the applicant must ensure that the underlying judgment was valid, service was proper, there was a valid assignment (if applicable) and the amount to be collected is correctly calculated as prerequisites to filling in the form, and they claim all of those determinations involve legal skill or knowledge. Plaintiffs portend "grave consequences" resulting from completion of the request for application form by an applicant who either does not have the legal acumen supposedly needed to make these determinations or who is not supervised by an attorney who does.[7]

We do not disagree that there are potentially significant legal consequences from the issuance of a writ, as the cases Plaintiffs' cite show. *See, e.g., Boone v. Lou Budke's Arrow Finance Company, Inc.*, 98 S.W.3d 555, 556 (Mo. App. E.D. 2002) (discussing wrongful garnishment action filed on ground debt had been discharged in bankruptcy); *Moon v. Tower Grove Bank & Trust Company*, 691 S.W.2d 399, 400 (Mo. App. E.D. 1985) (discussing wrongful garnishment action filed on ground underlying judgment void for

---

[7] Plaintiffs cite *Hulse v. Criger*, 247 S.W.2d 855, 862 (Mo. banc 1952), for the proposition that "form documents with legal consequences may only be prepared by a non-lawyer with appropriate supervision or oversight." This citation is to that Court's statement that a real estate broker is permitted to, under certain circumstances, fill in the blank spaces on standardized real estate "forms prepared or approved by counsel." *Id.* The *forms* had to be approved ahead of time, but the Court said nothing about supervision or oversight in the filling in the blanks on those forms.

13

lack of personal service). Legal skill may be needed in such proceedings that challenge the validity of the garnishment after it has been issued. But these challenges need not be addressed, much less eliminated, by the applicant prior to applying for the writ.

Rather, the only prerequisite to the act of issuing the writ of garnishment is receipt of the completed application: "Upon receipt of the garnishment application, the clerk *shall* process the application, issue the writ, and return the garnishment to the requesting party, who shall serve the garnishment on the garnishee as provided by Rule 90.03." Rule 90.02 (2017). The application instructs that the form "must be completed in full or your request will be returned unprocessed." At the end of the form is a box for issuing the "Writ of Garnishment," which is itself a series of blanks for the clerk of court to fill in.

Though more information is required by this form to trigger issuance under our current rules, issuance is still just as much a ministerial act as it was under the rules applicable in *Westerhold*. 950 S.W.2d at 621. Contrary to Plaintiffs' assertion, the Court in *Westerhold* did not "confuse" the request for garnishment with the issuance of garnishment, nor do we. They are obviously distinct acts done by different actors. But that does not mean, as Plaintiffs allege, that they have "nothing to do" with one another. In *Westerhold*, the ministerial nature of the response to a request for garnishment was instructive to the conclusion that the request required no legal skill or knowledge. *See id.* Likewise, in *Department of Social Services*, the lack of discretion to reject an appeal was instructive to the court's conclusion that no legal skill was involved in drafting and filing the petition for that appeal to the AHC. *See* 814 S.W.2d 700. Similarly here, the writ of garnishment will be automatically granted by the clerk upon the receipt of the form completed with basic non-legal information. This suggests that no legal discretion was needed to complete the form. The applicant did not have to exercise any judgment in

14

deciding what the clerk needed to issue the writ. The required information is identified by the form, and no legal skill is required to gather or supply that information, as discussed above. Short of submitting an incomplete application, the writ will issue "as a matter of course." *Westerhold*, 950 S.W.2d at 621.

Plaintiffs argue that our Court has "repeatedly held that non-attorneys cannot prepare legal forms for a statutory entity, even if those documents are approved by [OSCA]." Plaintiffs overstate the holdings of the cases they cite, and in any event they are distinguishable because they involved the assertion of legal claims similar to the acts in *Reed*. *See Palmore v. City of Pacific*, 393 S.W.3d 657, 664 (Mo. App. E.D. 2013). (concluding that application for trial de novo starts trial anew and, like filing of petition, is practice of law); *Mayer v. Lindenwood Female College*, 453 S.W.3d 307, 313 (Mo. App. E.D. 2014) (rejecting argument that notice of appeal was "ministerial act" and citing *Reed* regarding "assertion of legal rights"); *Joseph Sansone Company v. Bay View Golf Course*, 97 S.W.3d 531, 532 (Mo. App. E.D. 2003) (striking as void notice of appeal filed on behalf of corporation, without "practice of law" analysis, after corporation failed to respond to order to show cause why notice of appeal should not be stricken); *Schenberg v. Bitzmart, Inc.*, 178 S.W.3d 543, 544–45 (Mo. App. E.D. 2005) (rejecting argument that motion for new trial in judge-tried case is "perfunctory" and corporation not required to have attorney file motion on its behalf).[8]

---

[8] Plaintiffs' reliance on *Marchant v. U.S. Collections West, Inc.*, 12 F. Supp. 2d 1001, 1002 (D. Ariz. 1998) is misplaced. That case involves a federal district court's conclusion that filing a garnishment application constituted, under Arizona law, the practice of law. We need not resort to non-binding authority outside this jurisdiction, given the binding and persuasive precedent available in our own courts regarding what the Missouri judiciary says constitutes the practice of law in *this* State.

Filling in the blanks on the OSCA form applications for garnishment and accompanying interrogatories was not an assertion of a legal claim or legal position. There was no legal skill or knowledge involved in filling in the blanks on these OSCA forms with the basic information that automatically triggered the issuance of a writ of garnishment.[9] Metzger's conduct as alleged in the petition was not the practice of law. Therefore, as a matter of law, Plaintiffs' claims based on the premise that Metzger engaged in the unauthorized practice of law were properly dismissed. Plaintiffs' Points I and II are denied.

## Motion for Attorney Fees

Defendants contend in their cross-appeal that the trial court erred in denying their motion for attorney fees under the MMPA. We disagree.

We review the denial of a request for attorney fees under the MMPA for abuse of discretion. *Shiplet v. Copeland*, 450 S.W.3d 433, 439 (Mo. App. W.D. 2014). Attorney fees are authorized by the MMPA for prevailing defendants,[10] but awarding them "shall be the extremely rare exception, rather than the rule." *Arcese v. Daniel Schmitt &*

---

[9] Plaintiffs take issue with the trial court's supposed reliance on the fact that Metzger did not receive "valuable consideration" when it concluded he did not engage in the "practice of law." "Valuable consideration," they point out, is an element only of "law business" in the statutory definition, though it is included in the judicial definition of "practice of law." We need not further address the effect of this allegedly improper "conflation" of the definitions. Because Metzger's acts required no legal skill or knowledge, they are outside the scope of the practice of law irrespective of whether he received valuable consideration.

[10] Defendants claim that they "prevailed" by succeeding on their motion to dismiss, which resulted in the dismissal with prejudice of all Plaintiffs' claims, citing *State Board of Registration for Healing Arts v. Warren*, 820 S.W.2d 564, 564 (Mo. App. W.D. 1991). In that case, the court called the defendant, whose motion to dismiss an administrative complaint against him was granted, the prevailing party for purposes of awarding attorney fees under the Administrative Procedure Act. But the APA specifically defines "prevail" to include "dismissal . . . in an agency proceeding"—a definition not found in the MMPA—and thus this APA case is not on point here. *See* Section 536.085(3). Nevertheless, inasmuch as Defendants' status as a prevailing party was not contested at the trial court or on appeal and it is not dispositive, we leave for future determination whether success on a defense motion to dismiss meets our courts' definition of prevailing party under the MMPA. For the sake of our analysis, we will assume that it does.

16

*Company*, 504 S.W.3d 772, 789–90 (Mo. App. E.D. 2016) (concluding that assessing attorney fees against plaintiffs who do not prevail would undercut legislature's effort to promote vigorous enforcement of MMPA). "Trial courts shall sparingly assess attorney fees against plaintiffs and only when the defendant demonstrates the plaintiff has pursued vexatious and frivolous claims that would warrant dismissal of the claims and imposition of sanctions pursuant to Rule 55.03." *Id.*

Under Rule 55.03(d), sanctions are warranted if any of the rules regarding pleadings in Rule 55.03(c) have been violated. There are essentially three categories of pleadings that warrant sanctions under this rule: those maintained for an improper purpose, those that contain legally frivolous claims and those that are factually frivolous. *See* Rule 55.03(c)(1)-(4). Defendants' sole ground for awarding fees here is that Plaintiffs' claims were legally frivolous because they were directly contrary to the law in *Westerhold*. They contend that Plaintiffs "ignored" *Westerhold* in favor of other authority, which is a mischaracterization of Plaintiffs' pleadings. Plaintiffs did not ignore *Westerhold*; they immediately addressed it head-on when Defendants moved to dismiss the petition based on that case. Plaintiffs argued that *Westerhold* was distinguishable and inapplicable to this case and—because they claimed it did not apply—relied instead on other authority to support its position that Metzger's conduct constituted the unauthorized practice of law.

This case is unlike those in which sanctions based on legally frivolous claims were warranted under Rule 55.03. For instance, in *Brown v. Kirkham*, the plaintiff filed a cause of action without first attempting to obtain an adequate remedy in probate, a prerequisite that was not only well-settled Missouri law, but which the plaintiff had been expressly informed about in a prior appeal in the same case. 23 S.W.3d 880, 885 (Mo. App. W.D. 2000). The court found sanctions were warranted under Rule 55.03 because the plaintiff

17

relied only on the general law authorizing the cause of action, "while *ignoring* the treatment of the cause of action in Missouri case law." *Id.* (emphasis added). In *State v. Simmons*, a post-conviction pleading contained claims that had been "firmly and uniformly rejected by previous decisions of this Court and the federal courts." 955 S.W.2d 729, 745 (Mo. banc 1997). *No* arguments were presented "to confront and refute these decisions;" the petitioner "simply rehashed the arguments that these decisions had already rejected." *Id.* The Supreme Court found that did not constitute "a nonfrivolous argument for the extension, modification, or reversal of existing law" under Rule 55.03. *Id.*

Defendants also argue that Plaintiffs failed to set forth a "good faith argument" for overruling *Westerhold*. But they were not required to. Rule 55.03(c)(2) requires a pleading to set forth legal contentions that are "warranted by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." It is implicit in Rule 55.03(c)(2) that the existing law is *applicable* in the first place. Again, Plaintiffs argued that *Westerhold* was *inapplicable* and they relied instead on what they asserted was the applicable existing law. Because Plaintiffs claimed *Westerhold* was not applicable, they were under no obligation to make a nonfrivolous argument for its reversal or modification to comply with Rule 55.03(c)(2).

According to the trial court's judgment, it appears that at some point—perhaps at a hearing of which there is no transcript in the legal file—Plaintiffs argued "that *Westerhold* was wrongly decided." To the extent they made such an argument to the trial court, it was of course permissible as long as it was a "nonfrivolous argument." Defendants make no attempt to show that this argument—the details of which are not apparent to us—was frivolous. Defendants assert only that this argument was not made in "good faith," with no explanation or support in the record. Not only is this conclusory assertion unpersuasive,

18

it is based on an outdated standard. In 1994, the Supreme Court replaced the requirement in Rule 55.03 that the argument for reversal, extension or modification of an existing law be a "good faith argument" with the requirement that it be a "nonfrivolous argument."

Under these circumstances, it was well within the trial court's discretion to deny the motion for attorney fees under the MMPA. Defendants' point on cross-appeal is denied.

The judgment is affirmed.

_____
ROBERT G. DOWD, JR., Judge

Robert M. Clayton III, P.J. and
Roy L. Richter, J., concur.

# APPENDIX

Electronically Filed - St Louis County - July 30, 2018 - 11:17 AM

**EXHIBIT 3**

IN THE __21st__ JUDICIAL CIRCUIT, _____ St. Louis County, MISSOURI

**FILED**

FEB 07 2018

**JOAN M. GILMER**
CIRCUIT CLERK, ST. LOUIS COUNTY
(Date File Stamp)

| Judge or Division: | Case Number:<br>17SL-AC03091 |
|---|---|
| Petitioner(s):<br>J&M Securities, LLC<br>Assignee of Colorado Cold Rocks LLC<br>vs. | Date Judgment Entered Against Debtor:<br>03/08/2017<br>Original Amount of Judgment:<br>$1,603.75 |
| Respondent(s):<br>Tanisha L Winston | Please Issue: Garnishment<br>For: ☐ Bank Account ☐ Bond ☑ Wages<br>☐ Other: _____ |

Requested Return/End Date:
☐ 30 Days ☐ 60 Days ☐ 90 Days
☐ 120 Days ☐ 150 Days ☐ 180 Days
☑ Continuous (for wages only)

## Garnishment Application and Order
**(This form must be completed in full or your request will be returned unprocessed.)**

| To (County/City of St. Louis): Cole County | Amount Remaining Unpaid (To be completed by Applicant) | |
|---|---|---|
| Debtor Name/Address:<br>Tanisha L Winston<br>241 Henquin Dr., St. Louis, MO 63135 | Judgment Balance<br>Total amount of the judgment awarded on the day judgment is entered including, but not limited to, principal, prejudgment interest, and all costs and/or fees. | $ 1,603.75 |
| Debtor SSN (last four digits): XXX-XX- 8595 | Post Judgment Interest | $ 147.63 |
| Garnishee Name and Address:<br>Magellan Health, Inc.<br>c/o Reg Agent CSC-Lawyers Incorporating Service Company<br>221 Bolivar Street<br>Jefferson City, MO 65101 | ~~RMX~~ Judgment Costs | $ 130.00 |
| | Service Fee for this Writ | $ 30.00 |
| Garnishee ID # (court use only): AMAG HEA | Garnishment Clerk Fee Surcharge | $ 10.00 |
| | Taxes | $ |
| Creditor: J&M Securities, LLC | Child Support/Maint under 12 wks. | $ |
| Attorney: | Child Support/Maint over 12 wks. | $ |
| Missouri Bar No.: | Other: _____ | $ |
| A judgment was entered on the above referenced date and remains unsatisfied. | Less Credits | ($ 0.00) |
| The garnishor knows or has reason to believe the garnishee is indebted to debtor. The garnishee is obligated to make periodic payments to debtor, or the garnishee has control/custody of money and/or bonds belonging to debtor.<br><br>Signature: _____<br>Date: 2-7-18<br>Address & Telephone Number:<br>PO Box 21519<br>St. Louis, MO 63122-8519<br>314-726-5115   support@jmsecurities.com | **TOTAL REMAINING DUE** | $ 1,921.38 |
| | Instructions for Service and/or Garnishee: Include applicable instructions.<br>Garnish/Levy all wages, 1099 earnings, benefits, vacation pay, credit card tips, bonuses, expense reimbursements, and any and all other assets and income due judgment defendant but held, owed or in the possession of garnishee. This is an attempt to collect a debt. Any information will be used for that purpose. | |

**Requested by Applicant**
Make payments to: ☑ Court ☐ Attorney     Make Checks Payable To: Circuit Clerk
Mail Funds To: Office of the Circuit Clerk, P.O. Box 16994, Clayton, MO 63105-6994

### Writ of Garnishment (To be completed by Court Clerk)
**The State of Missouri to the Sheriff of any County in the State of Missouri**
Because a judgment was entered against the above debtor in this court and there is a balance, accrued interest, and costs as stated above unpaid from said judgment, you are commanded to execute this writ by following the instructions on the reverse side of this writ and on the return date shown below to certify to this court how you executed this writ.

| (Seal) | Issuing County: St. Louis | Document ID / Garn Number: 18-Garn-608? |
|---|---|---|
| | Issue Date: 2-8-18 | Return Date (if applicable): continuous |
| | Issued By (Clerk): Lucretia A. Johnson | |
| | Court Address: | |

### Summons and Instructions to Garnishee
**To the Above-Named Garnishee:**
You are notified that I attach all goods, personal property, money, credits, bonds, bills, notes, checks, choses in action, or other effects and all debts owed to the above named debtor that are in your possession or charge, or under your possession or charge, or under your control from this time until the return date or a sufficient sum to satisfy the total amount of garnishment shown above. You are further notified to file your answers to the interrogatories served within ten days after the above return date, or in the case of a continuous wage garnishment, within 20 days from the date on which you are served with the writ.

| Date: | Sheriff/Server: |
|---|---|
| County: | Service Acknowledged By: |

Electronically Filed - St. Louis County - July 30, 2018 - 11:17 AM

## Sheriff or Server's Return

I certify that I have served this summons/writ:

☐ By delivering a copy of the summons/writ to the garnishee.

☐ By leaving a copy of the summons/writ at the dwelling place or usual abode of each of the garnishees with _____, a person of the garnishee's family over the age of 15 years.

☐ Other _____

Served in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

**Service Fees**

| | | |
|---|---|---|
| Summons/Writ | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary Supplemental Surcharge | $___10.00___ | |
| Mileage | $_____ | (_____ miles.@ $._____ per mile) |
| Total | $_____ | |

_____
Sheriff/Server

## Instructions to Sheriff/Server

**Garnishment**
You are commanded to summon the garnishee and attach the property subject to garnishment in the garnishee's possession or charge or under the garnishee's control between the time notice is served and the return date.

## Applicable Provisions Relating to Garnishments

**525.030 RSMo**

2. The maximum part of the aggregate earnings of any individual for any workweek, after the deduction from those earnings on any amounts required by law to be withheld, which is subjected to garnishment may not exceed (a) twenty-five per centum, or, (b) the amount by which the individual's aggregate earnings for that week, after the deduction from those earnings of any amounts required to be withheld by law, exceed thirty times the federal minimum hourly wage prescribed by section 6(a)(1) of the Fair Labor Standards Act of 1938 in effect at the time of the earnings are payable, or (c) if the employee is the head of a family and a resident of this state, ten per centum, whichever is less.

The restrictions on the maximum earnings subjected to garnishment do not apply in the case of any order of any court for the support of any person, and order of any court of bankruptcy under chapter XIII of the Bankruptcy Act or any debt due for any state or federal tax.

For pay periods longer than one week, the provisions of subsection 2(a) and (c) of this section shall apply to the maximum earnings subjected to garnishment for all workweeks compensated, and under subsection 2(b) of this section, the "multiple" of the federal minimum hourly wage equivalent to that applicable to the earnings subject to garnishment for one week shall be represented by the following formula: The number of workweeks or fractions thereof (x) x 30 x the applicable federal minimum wage. For the purpose of this formula, a calendar month shall be considered to consist of 4 1/3 workweeks, a semimonthly period to consist of 2 1/6 weeks. The "multiple" for any pay period longer than one week shall be computed in a manner consistent herewith.

The restrictions on the maximum amount of earnings subjected to garnishment shall also be applicable to all proceedings involving the sequestration of wages of employees of all political subdivisions.

The term "earnings" as used herein means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

5. No employer may discharge any employee by reason of the fact that the employee's earnings have been subjected to garnishment or sequestration for any one indebtedness.

6. Whoever willfully violates the provisions of subsection 5 of this section is guilty of a misdemeanor.

**15 U.S.C. 1672 Restrictions on Garnishment - Definitions**
For the purposes of this subchapter (a) the term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program. (b) The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld. (c) The term "garnishment" means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt.

**15 U.S.C. 1673 Restrictions on Garnishment - Maximum Allowable Garnishment**

(b)(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed:

(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and

(B) where such individual is not supporting a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week; except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.

Electronically Filed - St Louis County - July 30, 2018 - 11:17 AM

## Notice to Judgment Debtor

A garnishment has been levied. Certain funds may be exempt under sections 513.430 and 513.440, RSMo, or under Title 31 C.F.R. Part 212. You have the right to hold the funds as exempt from garnishment. You may claim any exemption by filing a claim for exemption with the court within 20 days after being served with the notice of garnishment.

### List of Exempt Property

Certain property cannot be taken to satisfy a garnishment. This is called exempt property. Pursuant to Supreme Court Rule 90.035, you are advised that sections 452.140, 513.430, 513.440, 513.475, and 513.480, RSMo, set forth below, make certain property exempt from execution, and you are advised that there are certain exemptions under state and federal law which you may be able to claim with respect to the property levied upon.

Note: The Code of Federal Regulations for garnishments of accounts containing federal benefit payments (Title 31 C.F.R. Part 212) can be found at www.ecfr.gov.

452.140. No property shall be exempt from attachment or execution in a proceeding instituted by a person for maintenance, nor from attachment or execution upon a judgment or order issued to enforce a decree for alimony or for the support and maintenance of children. And all wages due to the defendant shall be subject to garnishment on attachment or execution in any proceedings mentioned in this section, whether the wages are due from the garnishee to the defendant for the last thirty days' service or not.

513.430. 1. The following property shall be exempt from attachment and execution to the extent of any person's interest therein:

(1) Household furnishings, household goods, wearing apparel, appliances, books, animals, crops or musical instruments that are held primarily for personal, family or household use of such person or a dependent of such person, not to exceed $3,000 in value in the aggregate;

(2) A wedding ring not to exceed $1,500 in value and other jewelry held primarily for the personal, family or household use of such person or a dependent of such person, not to exceed $500 in value in the aggregate;

(3) Any other property of any kind, not to exceed in value $600 in the aggregate;

(4) Any implements or professional books or tools of the trade of such person or the trade of a dependent of such person not to exceed $3,000 in value in the aggregate;

(5) Any motor vehicles, not to exceed $3,000 in value in the aggregate;

(6) Any mobile home used as the principal residence but not attached to real property in which the debtor has a fee interest, not to exceed $5,000 in value;

(7) Any one or more unmatured life insurance contracts owned by such person, other than a credit life insurance contract;

(8) The amount of any accrued dividend or interest under, or loan value of, any one or more unmatured life insurance contracts owned by such person under which the insured is such person or an individual of whom such person is a dependent; provided, however, that if proceedings under Title 11 of the United States Code are commenced by or against such person, the amount exempt in such proceedings shall not exceed in value one hundred fifty thousand dollars in the aggregate less any amount of property of such person transferred by the life insurance company or fraternal benefit society to itself in good faith if such transfer is to pay a premium or to carry out a nonforfeiture insurance option and is required to be so transferred automatically under a life insurance contract with such company or society that was entered into before commencement of such proceedings. No amount of any accrued dividend or interest under, or loan value of, any such life insurance contracts shall be exempt from any claim for child support. Notwithstanding anything to the contrary, no such amount shall be exempt in such proceedings under any such insurance contract which was purchased by such person within one year prior to the commencement of such proceedings;

(9) Professionally prescribed health aids for such person or a dependent of such person;

(10) Such person's right to receive:

(a) A Social Security benefit, unemployment compensation or a public assistance benefit;

(b) A veteran's benefit;

(c) A disability, illness or unemployment benefit;

(d) Alimony, support or separate maintenance, not to exceed $750 a month;

(e) Any payment under a stock bonus plan, pension plan, disability or death benefit plan, profit-sharing plan, nonpublic retirement plan or any plan described, defined, or established pursuant to section 456.014 , the person's right to a participant account in any deferred compensation program offered by the state of Missouri or any of its political subdivisions, or annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of such person and any dependent of such person unless:

a. Such plan or contract was established by or under the auspices of an insider that employed such person at the time such person's rights under such plan or contract arose;

b. Such payment is on account of age or length of service; and

c. Such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408, 408A or 409 of the Internal Revenue Code of 1986, as amended, (26 U.S.C. Section 401(a), 403(a), 403(b), 408, 408A or 409);

except that any such payment to any person shall be subject to attachment or execution pursuant to a qualified domestic relations order, as defined by Section 414(p) of the Internal Revenue Code of 1986, as amended, issued by a court in any proceeding for dissolution of marriage or legal separation or a proceeding for disposition of property following dissolution of marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of marital property at the time of the original judgment of dissolution;

(f) Any money or assets, payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan, profit-sharing plan, health savings plan, or similar plan, including an inherited account or plan, that is qualified under Section 401(a), 403(a), 403(b), 408, 408A or 409 of the Internal Revenue Code of 1986, as amended,

Electronically Filed - St Louis County - July 30, 2018 - 11:17 AM

whether such participant's or beneficiary's interest arises by inheritance, designation, appointment, or otherwise, except as provided in this paragraph. Any plan or arrangement described in this paragraph shall not be exempt from the claim of an alternate payee under a qualified domestic relations order; however, the interest of any and all alternate payees under a qualified domestic relations order shall be exempt from any and all claims of any creditor, other than the state of Missouri through its department of social services. As used in this paragraph, the terms "alternate payee" and "qualified domestic relations order" have the meaning given to them in Section 414(p) of the Internal Revenue Code of 1986, as amended. If proceedings under Title 11 of the United States Code are commenced by or against such person, no amount of funds shall be exempt in such proceedings under any such plan, contract, or trust which is fraudulent as defined in subsection 2 of section 428.024 and for the period such person participated within three years prior to the commencement of such proceedings. For the purposes of this section, when the fraudulently conveyed funds are recovered and after, such funds shall be deducted and then treated as though the funds had never been contributed to the plan, contract, or trust;

(11) The debtor's right to receive, or property that is traceable to, a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

(12) Firearms, firearm accessories, and ammunition, not to exceed $1,500 in value in the aggregate.

2. Nothing in this section shall be interpreted to exempt from attachment or execution for a valid judicial or administrative order for the payment of child support or maintenance any money or assets, payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan which is qualified pursuant to Section 408A of the Internal Revenue Code of 1986, as amended.

513.440. Each head of a family may select and hold, exempt from execution, any other property, real, personal or mixed, or debts and wages, not exceeding in value the amount of $1,250 plus $350 for each of such person's unmarried dependent children under the age of twenty-one years or dependent as defined by the Internal Revenue Code of 1986, as amended, determined to be disabled by the Social Security Administration, except ten percent of any debt, income, salary or wages due such head of a family.

513.475. 1. The homestead of every person, consisting of a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the value of fifteen thousand dollars, which is or shall be used by such person as a homestead, shall, together with the rents, issues and products thereof, be exempt from attachment and execution. The exemption allowed under this section shall not be allowed for more than one owner of any homestead if one owner claims the entire amount allowed under this subsection; but, if more than one owner of any homestead claims an exemption under this section, the exemption allowed to each of such owners shall not exceed, in the aggregate, the total exemption allowed under this subsection as to any one homestead.

2. Either spouse separately shall be debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever, and every such sale, mortgage or alienation is hereby declared null and void; provided, however, that nothing herein contained shall be so construed as to prevent the husband and wife from jointly conveying, mortgaging, alienating or in any other manner disposing of such homestead, or any part thereof.

513.480. Whenever an execution shall be levied upon the real estate of any person, of which such homestead may be a part, or upon such part of any homestead as may be in excess of the limitation of the value thereof created in section 513.475, such person shall have the right to designate and choose the part thereof to which the exemption created in section 513.475 shall apply, not exceeding the limited value; and upon such designation and choice, or in case of a refusal to designate or choose, the sheriff levying the execution shall appoint three disinterested appraisers, who shall, first being sworn to a faithful discharge of their duties, fix the location and boundaries of such homestead, and the sheriff shall then proceed with the levy of such execution upon the residue of such real estate as in other cases; and such proceedings in respect to the homestead shall be stated in the return upon such execution.

513.465 Nothing contained in this chapter shall be construed so as to exempt any property from seizure and sale for the payment of taxes due this state, or any city, town or county thereof.

NOTE: No money or assets payable under a retirement plan qualifying under the Internal Revenue Code are exempt from a garnishment for the purpose of collecting child support or maintenance due under a valid judicial or administrative order.

Electronically Filed - St Louis County - July 30, 2018 - 11:17 AM

IN THE __21st__ JUDICIAL CIRCUIT, _____St. Louis County_____, MISSOURI

| Judge or Division: | Case Number:<br>17SL-AC03091 |
|---|---|
| Petitioner(s):<br>J&M Securities, LLC<br>Assignee of Colorado Cold Rocks LLC<br><br>vs. | Garnishee's Name/Address:<br>Magellan Health, Inc.<br>c/o Reg Agent CSC-Lawyers Inc. Service Co<br>221 Bolivar Street<br>Jefferson City, MO 65101 |
| Respondent(s):<br>Tanisha L Winston | Judgment Debtor's Name/Address:<br>Tanisha L Winston<br>241 Henquin Dr.<br>St. Louis, MO 63135 |

18-Garn-608

(Date File Stamp)

## Interrogatories to Garnishee

**Instructions:** You are to answer interrogatories under oath during the ten days immediately after the return date of the writ or, in the case of a continuous wage garnishment, within 20 days from the date on which the garnishee is served with the writ, and mail the original to:

OFFICE OF THE CIRCUIT CLERK
St. Louis County
P.O. Box 16994
Clayton, MO 63105

MAIL COPY TO:
J & M Securities
PO Box 221519
St. Louis, MO 63122
Fax: 314-726-5117
support@jmsecurities.com

and a copy to the attorney for the judgment creditor (or the judgment creditor individually if there is no attorney) stated on page 2 of this form. The answers to the interrogatories should be based from the time of service of the garnishment, or any time thereafter until the return date stated in the summons of garnishment or, in the case of a continuous wage garnishment, when judgment is satisfied or the employment is terminated.

1. Have you had in your possession, charge, or under your control any property, money (excluding wages, salary, and commissions), or other effects of the judgment debtor? If yes, state what property, how much, of what value, and what money or effects. In the case of a wage garnishment, state the gross amount of earnings, as defined in section 525.030, RSMo, due to the debtor and the nonexempt portion of such earning subject to garnishment.
   Answer:

2. Did you owe the judgment debtor any money (including wages, salary, and commissions), or do you owe the judgment debtor any now?
   Answer:

   **If not yet due: When will it become due?**
   If amount owed judgment debtor is for wages, salary, or commission state:

   a. Amount owed after deductions required by law $_____. (Deductions required by law are limited to federal, state, and city income and earnings taxes and FICA taxes.)

   b. Amount withheld pursuant to the garnishment $_____.

3. Is the judgment debtor still employed by you? ☐ Yes  ☐ No
   If no, state the date his/her employment terminated.
   Answer:

   **Note: You must notify the garnishor if the judgment debtor's employment with you is terminated.**

Electronically Filed - St Louis County - July 30, 2018 - 11:17 AM

4. What is the judgment debtor's last known address?
Answer:

5. If the judgment debtor's wages have been attached by more than one writ of garnishment, please list the case number of all senior garnishments. .
Answer:

6. Will you or have you since become or are you now bound in any contract to pay the judgment debtor money not yet due?
☐ Yes  ☐ No  If yes, state the amount to be paid out and when due and payable.
Answer:

7. Do you know of any person or entity, other than the judgment debtor, who claims an ownership interest in any property, money or effects of the judgment debtor or any amounts owed to the judgment debtor as disclosed by you in answer to interrogatories 1, 2, and 6? If yes, please provide the name and address of each such person or entity and identify the property, money or effects of the judgment debtor in which each such person or entity claims an interest?
Answer:

8. If garnishee is a bank or other financial institution, state whether at the time the writ of garnishment was served or at any subsequent time did the debtor have funds on deposit in an account in which all funds are deposited electronically on a recurring basis and reasonably identified as being funds on deposit that are exempt from garnishment pursuant to section 513.430.1(10)(a), (b), or (c), RSMo, or subject to the exemptions under Title 31 C.F.R. Part 12.
☐ Yes  ☐ No  If yes, identify each account, state the reason for the believed exemption, and identify the entity electronically depositing those funds which are not attachable pursuant to section 513.430.1(10)(a), (b), or (c), RSMo, or subject to the exemptions under Title 31 C.F.R. Part 12.
Answer:

I swear/affirm under the penalty of perjury that I have read the foregoing Interrogatories and the answers given are true to the best of my knowledge and belief, and that no exempt funds have been or will be attached.

_____
Signature of Garnishee

Judgment Creditor:

J&M Securities, LLC        11833
_____
Name

PO Box 221519
_____
Address

St. Louis, MO 63122-8519, 314-726-5115
_____
City, State, Zip Code
support@jmsecurities.com